# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRON HORSE ACQUISITIONS CORP. and BENGOCHEA CAPITAL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OMNIA GLOBAL a.k.a. OMNIA SCHWEIZ GMBH, DANIEL HANSEN, METTE ABEL HANSEN, and JAMES MAIR FINDLAY,<br><br><br>Defendants. | **Case No. 1:24-cv-00048**<br><br>**COMPLAINT FOR CONSPIRACY TO PARTICIPATE AND PARTICIPATION IN AN ENTERPRISE ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. § 1962 (RICO), EXTORTION, THEFT, FRAUD, CONVERSION OF BUSINESS PROPERTY, CIVIL CONSPIRACY, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, AND UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Iron Horse Acquisitions Corp. and Bengochea Capital LLC (collectively as the "Plaintiffs"), by and through their undersigned attorneys, file their complaint ("Complaint") against Defendants Omnia Global a.k.a. Omnia Schweiz GmbH, Daniel Hansen, Mette Abel Hansen, and James Mair Findlay (collectively as the "Defendants") and allege as follows:

## I.  INTRODUCTION

1.      Defendant Omnia Global a.k.a. Omnia Schweiz GmbH ("Omnia") claims to be "an entrepreneurial family office specializing in alternatives, private to public investments with use of innovative finance and leverage within structured finance in order to consistently grow our balance sheet" and operating out of an office located at Zugerstrasse 32, 6340 Baar, Zug Switzerland.[1]

---

[1] https://omniaglobal.com/about-us



# About

**Bespoke solutions**

# An entrepreneurial and non-conservative family office

OMNIA Global is an entrepreneurial family office specialising in alternatives, private to public investments with use of innovative finance and leverage within structured finance in order to consistently grow our balance sheet.

As OMNIA exists on the basis of first-generation self-made wealth, we search for like-minded fiery souls to invest in and with, while addressing the pitfalls of traditional investment frameworks.

We believe in passive investments combined with involvement when needed and offsetting our equity and debt risk towards the public and capital markets, when we are able to do so.

Our overall aim is to take care of the current balance sheet while continuing to grow – with extensive focus on continuously enjoying the journey, which is why we focus on exciting projects, partners and like-minded people for us to, in the end, make a difference in the world.

2.      Defendant Daniel Hansen ("Daniel Hansen") claims to be the Founder and Chief

Executive Officer ("CEO") of Defendant Omnia.[2]



### Founder and CEO of OMNIA Global, Daniel Hansen

Daniel Hansen started his entrepreneurial journey at the age of only 16, when he formed his first company and ventured through the tech industry within IT equipment, hotel booking software, remote backup and VoIP. The industry he was in was less important than his interest of scaling companies, and the journey is now focused on financial engineering of acquisitions and roll-ups with a public listing as the exit.

Today, the Danish native lives in Switzerland from where he runs his own non-conservative family office, OMNIA Global – a company that invests in likeminded entrepreneurs, deals and projects with a strong focus on the people involved and their mindset. OMNIA and Daniel Hansen are closely combined since the entrepreneur has transferred many of his beliefs onto the company.

As a person who sees opportunities everywhere, Daniel Hansen is a strong believer in constantly creating new dots that at some point in one way or another will connect in the end. This means that Daniel is constantly meeting new people, setting up meetings and calls and generally being on the move for large periods of the year. Meeting people, creating ideas, forming partnerships and traveling around the world is what fuels his mind and creativity. His main focus is on who the business partners are and which causes they are motivated by – the potential profits come second. The why is always the most important part in the aspects of doing business.

Daniel's interest in finance comes from the experience and belief that the world is overflowing with ideas from great minds, but that it is with the execution of those ideas that most entrepreneurs struggle. The financing element of the execution of all the great ideas is often a large time consumer for most founders, and therefore, focusing on this element will create most value.

### Daniel Hansen and OMNIA believe in transparency

---

[2] https://omniaglobal.com/daniel-hansen

3.      Defendant Mette Abel Hansen ("Mette Abel Hansen") claims to be the Co-Founder and Chief Operating Officer ("COO") of Defendant Omnia, "oversee[ing] all operations for the business, including finance, HR, technology, and marketing functions.  In addition, she works alongside [co-defendant] CEO Daniel Hansen to manage relations with the firm's global network of brokers, founder partners and consultants."[3]



4.      Defendant James Mair Findlay ("Findlay") did serve as a director on the Board of Directors for Plaintiff Iron Horse Acquisitions Corp. ("IHAC") from on or about October 17, 2022, until on or about November 24, 2023.

5.      Defendant Findlay claims to be the Vice President of Investment and Finance of Defendant Omnia since February 2019 and continuing to the present date (publicly publishing such on international and domestic social media[4]) and further claims that he "[l]ed due diligence efforts, financial analysis, and market research for all potential deals or partnerships that fit within OMNIA's investment criteria with North America and Europe."

---

[3] https://metteabelhansen.com/
[4] https://www.linkedin.com/in/jamesfindlay87/



### James Findlay · 3rd

Family Office | Private Equity | Venture Capital | Structured Finance | SPACs

New York, New York, United States · Contact info

500+ connections

 OMNIA Global

 The London School of Economics and Political Science (LSE)

## Experience

 **OMNIA Global**
Full-time · 6 yrs

**VP of Investment & Finance**
Feb 2019 - Present · 4 yrs 11 mos
Greater New York City Area · Remote

• Led due diligence efforts, financial analysis, and market research for all potential deals or partnerships that fit within OMNIA's investment criteria within North America and Europe.

• Project manager responsible for the oversight and execution of developing investment theses, gathering market data; preparing investment memoranda; leading presentations and tours with capital partners; negotiating term sheets and/or loan documents; and presenting to investment committees.

• Prepared valuation templates using DCF, Market Comps, Yield Analysis, Sum of All Parts, as well as other, more bespoke valuation methodologies. Lead interactions with external valuation firms and valuation questions raised by auditors.

• Cultivated a close working relationship with business stakeholders to ensure alignment of strategy, as well as with all third party providers to ensure alignment on timing.

**Skills:** Networking · Business Development · Investment Analysis · Valuation Modeling · Capital Markets

**Senior Investor Relations / Business Development Manager**
Jan 2018 - 2019 · 1 yr 1 mo
Baar, Canton of Zug, Switzerland · On-site

Researched and proposed new business and partnership opportunities in the Fixed Income, Private Equity, and Art Finance sectors. Identified further structured finance opportunities to expand OMNIA's g  ...see more

**Skills:** Networking · Business Development · Problem Solving · Customer Relationship Management (CRM) · Capital Markets

6.     In actuality, the Defendants, Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay, at all times relevant to this Complaint, did operate, and, upon information and belief, continue to operate, an international criminal enterprise which violates the laws and regulations of the United States of America ("U.S.") in extorting and defrauding U.S. citizens and in defrauding U.S. business enterprises, as well as Omnia's own international investors ("Omnia Investors").

7.     Upon information and belief, the Defendants have defrauded multiple U.S. companies including, but not limited to, the Plaintiffs (collectively as the "Defrauded Companies") in an amount equal to no less than four million five hundred thousand dollars ($4,500,000.00USD).

8.     Upon information and belief, the Defendants have engaged in fraud, deceptive trade practices, and/or breaches of fiduciary duty with respect to one or more Omnia Investors in an amount equal to no less than three million five hundred thousand dollars ($3,500,000.00USD).

9.      Defendants intentionally interfered with both the viability and timing of Plaintiff IHAC's initial public offering (the "IPO") thereby affecting interstate commerce and thereby manipulating U.S. security markets (the "Stock Market"), including the New York Stock Exchange ("NYSE") and the Nasdaq Global Market ("NASDAQ").

10.     Defendants, by their own admissions, in furtherance of their criminal enterprise and criminal conspiracy, utilize offshore "shell" companies located in the British Virgin Islands in order to frustrate law enforcement efforts and elude accountability and fiscal responsibility to their victims for the crimes and torts that they commit in the U.S. and elsewhere.

11.     Defendants, over a period of more than one (1) year, commencing in or about March 2022, and continuing until December 5, 2023, (the "Relevant Period"), provided material information they knew to be false to the Plaintiffs in order secure and maintain a position for

Defendant Findlay on the Board of Directors of IHAC ("BOD Position") in order to steal trade secrets and other business property belonging to the Plaintiffs.

12.     Defendants, during the Relevant Period, provided material information they knew to be false to the Plaintiffs in order to maintain Findlay's BOD Position so that Defendants could perpetrate thefts of the trade secrets of Plaintiff IHAC.

13.     Defendants, during the Relevant Period, provided information they knew to be false to the Plaintiffs in order to maintain Findlay's BOD Position so that Defendants could engage in the tortious conversion of intellectual property and other business assets of the Plaintiffs.

14.     Defendant Findlay breached his fiduciary a) duty of loyalty; b) duty of care; and/or c) duty of good faith to IHAC by unlawfully converting IHAC's intellectual property and other business assets and, upon information and belief, repurposing the same for the benefit of other special purpose acquisition companies ("SPACs") whose operations are competitive with those of Plaintiff IHAC.

15.     Defendants Omnia and Daniel Hansen entered into multiple written agreements with Plaintiff BC with the intent to defraud Plaintiff BC and did defraud Plaintiff BC.

16.     Defendants Omnia and Daniel Hansen materially breached each and every written agreement they entered into with Plaintiff BC.

17.     Defendant Daniel Hansen, when confronted with his fraud and other criminal and/or tortious conduct, threatened and/or implied the threat that Daniel Hansen will resort to physical violence if the victims of his fraud, Plaintiffs IHAC and Bengochea Capital LLC ("BC") pursued legal remedies against him and his co-Defendants when he stated, "We have people outside the legal process [that will deal with you!]" to a corporate officer of the Plaintiffs.

18.     Defendant Daniel Hansen, when confronted with his fraud and other criminal and/or tortious conduct, explained that he is unconcerned with any legal actions against him as he brazenly proclaimed, "Good luck getting past our [British Virgin Island] shell companies and collecting anything [against Omnia and me]."

19.     The frauds and other criminal conduct of the Defendants were perpetrated by the Defendants utilizing telephonic communications, electronic mail ("email"), SMS & Apple Messages text messages ("texts"), and WhatsApp text messages ("WhatsApp") and therefore are in violation of the United States Code (U.S.C.) Title 18 prohibitions against "Wire Fraud".

20.     The frauds and other criminal conduct of the Defendants were perpetrated by the Defendants using telephonic and other electronic communications that occurred in and crossed the state lines of multiple U.S. States, including, but not limited to, New York, Florida, Connecticut, and California.

21.     The frauds and other criminal conduct of the Defendants were perpetrated by the Defendants using telephonic and other electronic communications, occurred both within and outside of the U.S., and utilized both domestic and international communications carriers.

22.     The frauds and other criminal conduct of the Defendants affected and interfered with the Stock Market and affected and interfered with interstate commerce.

## II. NATURE OF ACTION

23.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

24.     This is an action for conspiracy to participate in and participation in a long-running, continuing enterprise, engaging in a continuing pattern of racketeering activity, arising under the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, including, but not limited to, criminal extortion (RICO) and criminal wire fraud (RICO), in addition to civil fraud, fraudulent inducement, conversion of business property, civil conspiracy, misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and unjust enrichment.

## III. PARTIES

25.     Plaintiff, Bengochea Capital, LLC ("BC"), is a Florida limited liability company with its principal place of business located in Miami-Dade County, Florida, U.S.A.

26.     Plaintiff, Iron Horse Acquisitions Corp. ("IHAC"), is a Delaware corporation with its principal place of business located in Los Angeles County, California, U.S.A.

27.     Upon information and belief, Defendant Omnia Global a.k.a. Omnia Schweiz GmbH ("Omnia") is a Swiss business organization maintaining its headquarters in Zug Switzerland.

28.     Upon information and belief, based on statements made by Defendant Daniel Hansen, Omnia Global utilizes one or more "shell companies" located in, and operating out of, the British Virgin Islands.

29.     Upon information and belief, Defendant Daniel Hansen is a natural person and citizen of Switzerland.

30.     Upon information and belief, Defendant Daniel Hansen utilizes a U.S. Visa to enter the U.S. for personal and business purposes.

31.     Upon information and belief, Defendant James Mair Findlay is a natural person who is domiciled in Greenwich, Connecticut, U.S.

32.     Upon information and belief, Defendant James Mair Findlay also claims that he is a resident of Ocean Reef, Florida, U.S. and possess and utilizes a Florida Driver's License.[5]

33.     Upon information and belief, Defendant Mette Abel Hansen is a natural person and citizen of Switzerland.

34.     Upon information and belief, Defendant Mette Abel Hansen utilizes a U.S. Visa to enter the U.S. for personal and business purposes.

## IV.  JURISDICTION AND VENUE

35.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

36.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

37.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount is controversy exceeds seventy-five thousand dollars ($75,000.00USD), exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiffs and Defendants.

38.     This Court has personal jurisdiction over the Defendants pursuant to Federal Rules of Civil Procedure 4(k)(1)(A), 4(k)(1)(C), and 4(k)(2).

39.     This Court also has personal jurisdiction over the Defendants because the Defendants executed written agreements stating, "The exclusive venue and/or jurisdiction for any

---

[5] It is the Plaintiffs' good faith belief based on adequate investigation and conferences with legal counsel, that Defendant James Mair Findlay, in an effort to engage in illegal income tax evasion, falsely claims residency in the State of Florida (which does not have a personal income tax), while actually residing in Connecticut (which does tax personal income) thereby defrauding the State of Connecticut and other local jurisdictions of income tax revenue.

proceeding that may be brought in connection with this Agreement shall be any federal and state court located in New York, New York, [U.S.] and each of the Parties irrevocably consents to such venue and/or jurisdiction."

40.     This Court also has personal jurisdiction over the Defendants because Defendants Omnia Global, Daniel Hansen, Mette Abel Hansen, and Findlay entered into and remained in the State of New York, County of New York, U.S., in order to negotiate multiple agreements and in order to execute said agreements.

41.     This Court also has personal jurisdiction over the Defendants because Defendants regularly entered into, remained in, and transacted business in the State of New York, County of New York, U.S.

42.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because a) a substantial part of the events giving rise to this action occurred in this judicial district and b) the Defendants agreed to venue in this judicial district by executing written agreements setting venue and jurisdiction in this judicial district.

43.     In addition, this Court is the proper venue for this action pursuant and 18 U.S.C. 1965 and to 28 U.S.C. § 1391(c)(3).


## V.  FACTUAL ALLEGATIONS

Preliminary Representations and Negotiations

44.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

45.     Plaintiff IHAC is a public company listed on the NASDAQ Stock Market under the symbol "IROHU"[6].

46.     Plaintiff IHAC is a SPAC having a principal purpose and goal of sourcing, negotiating, and consummating an initial business combination with one or more film studios or other businesses.

47.     Plaintiff BC is a private company focused on pursuing global opportunities in media and entertainment and that acts as the controlling equityholder of Bengochea SPAC Sponsors I LLC, another private company affiliated with IHAC that is serving as the sponsor of the SPAC.

48.     In or about March 2022, Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay expressed interest in investing in IHAC via a written agreement with BC.

49.     Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay informed Plaintiffs that Omnia was an international investment fund with "hundreds of millions of dollars in assets."

50.     Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay informed Plaintiffs that the Defendants had extensive experience in "start-up companies pursuing an IPO" and currently "offers roll-ups, debt financing, leverage buyouts as well as private to public growth plans."

51.     Defendants Omnia, Daniel Hansen, Metter Hansen, and Findlay informed Plaintiffs that the Defendants had extensive experience in SPACs and further informed the Plaintiffs that the Defendants "could bring great value in leadership and support" to the Plaintiffs then-upcoming SPAC IPO.

---

[6] During the Relevant Period, IHAC was in the process of launching its IPO and was not yet 'public'.

52.     Defendant Daniel Hansen, the CEO of Defendant Omnia, touted himself as an industry leader and subject matter expert in SPACs in a media presentation entitled "The OMNIA Global view on: SPACs."[7]

53.     Defendant Omnia's international website states in great detail Omnia's understanding of, and experience with, SPACs.[8]

54.     Relying on the statements of Defendants and on the information contained on their public website and in presentations presented by Defendant Daniel Hansen, Plaintiffs began negotiating an agreement with the Defendants in which the Defendants would purchase an equity interest in IHAC.

55.     Relying on the statements of Defendants and on the information contained on their public website and in the media presentation presented by Defendant Daniel Hansen, during the Relevant Period, Plaintiffs spoke with Defendants Daniel Hansen, Mette Abel Hansen, and Findlay utilizing various form of communication (email, Zoom, and telephone calls), including meeting with Defendant Findlay in New York City, New York, U.S.A. ("NYC"), at various points between March 2022 and September 2022 to engage in negotiating an agreement with the Defendants in which the Defendants would purchase an equity interest in IHAC ("NYC Meetings").

56.     Relying on the previous statements of Defendants, the information contained on their public website, the media presentation presented by Defendant Daniel Hansen, and the Defendants' representations made to the Plaintiffs at the NYC Meeting, the Plaintiffs sent their representative from Los Angeles, California to Switzerland in order to meet with and further discuss Defendants' business interest in BC and IHAC ("Swiss Meetings").

---

[7] https://omniaglobal.com/podcast/the-dot-connectors/the-omnia-global-view-on-spacs
[8] https://omniaglobal.com/news/spacs-and-the-power-of-the-story

57.     During the Swiss Meetings, the Defendant Daniel Hansen assured the Plaintiffs that the Defendants a) had sufficient assets in order to make a "multi-million dollar" investment in IHAC; b) had "extensive experience and expertise in SPACs"; and c) "could bring great value and expertise to [Plaintiff's SPAC]."

58.     During the Swiss Meetings, Defendants further reassured BC and IHAC that Defendants had sufficient assets and liquid capital in order to purchase a large equity share in IHAC.

59.     During the Swiss Meetings, Defendant Daniel Hansen made statements and presented various documents to the Plaintiffs in order to further assure and convince the Plaintiffs that the Defendants were financially able to meet the obligations of a purchase of equity in IHAC.

60.     During both the NYC meetings and the Swiss Meetings, and on multiple occasions between said meetings, the Defendants repeatedly informed the Plaintiffs that Omnia Investors were very interested in investing their funds managed by Omnia in the "entertainment and media" sector.

61.     During both the NYC meetings and the Swiss Meetings, the Defendants repeatedly informed the Plaintiffs that IHAC would be a valuable addition to Omnia's global portfolio and would attract further investment from Omnia Investors.

62.     During both the NYC meetings and the Swiss Meetings, the Defendants repeatedly informed the Plaintiffs that Omnia "has already had discussions with [several Omnia Investors] who are interested in [IHAC]."

63.     Subsequent to the Swiss Meetings, the Plaintiffs and the Defendants began negotiating a written agreement to memorialize what was agreed to in the NYC Meetings and in the Swiss Meetings in which Defendant Omnia would purchase shares and warrants of IHAC "for

an aggregate total investment of up to $3.5m" in exchange for a) equity in IHAC; and a Board of Director position on IHAC's Board of Directors ("Board Seat").

64.     The Defendants, at the time of the negotiations with the Plaintiffs, knew that the Defendants did not have three million five hundred thousand dollars ($3,500,000.00USD).

65.     The Defendants, at the time of the negotiations with the Plaintiffs, knew that, in actuality, the Defendants did not even have one million dollars ($1,000,000.00USD).

66.     The Defendants, at the time of the negotiations with the Plaintiffs, intentionally deceived the Plaintiffs into believing that the Defendants were capable of investing three million five hundred thousand dollars ($3,500,000.00USD) with IHAC while knowing that Defendants were financially insolvent.

67.     The Defendants, at the time of the negotiations with the Plaintiffs, desired the Board Seat so that Defendants could engage in the misappropriation of trade secrets and conversion of the business property of the Plaintiff IHAC.

68.     The Defendants, at the time of the negotiations with the Plaintiffs, did not have any intention of performing on the promises and representations they made to the Plaintiffs.


October 17, 2022 Written Memorialization

69.     Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay spoke with the Plaintiffs in or around October 2022, in order to finalize the terms to be contained in a written memorialization of the parties' understanding of their agreement.

70.     Despite the Defendants lacking adequate funds to perform under the terms of the agreement, and the Defendants knowing that Defendants lacked adequate funds to perform under the terms of the agreement, on or about October 17, 2022, the Defendant Omnia entered into, and

executed, a written memorialization with the Plaintiffs which stated the terms negotiated by the Defendants and the Plaintiffs ("10/17/22 Terms").

71.     Defendant Daniel Hansen executed and affixed his signature to the 10/17/22 Terms.

72.     Specifically, the 10/17/22 Terms stated that Defendant Omnia would invest three million five hundred thousand dollars ($3,500,000.00USD) in IHAC in exchange for Plaintiffs issuing to Defendant Omnia a) shares and warrants of IHAC; and b) the Board Seat.

73.     Specifically, the 10/17/22 Terms provided that "the Director seat and Strategic Advisor role offered to [Defendants] was contingent upon [Defendant providing $3,500,000.00 to IHAC and Defendant Findlay] submitting to a background check (to be completed as soon as possible) and clearing the background check, and [Defendant Omnia] and/or [Defendant Omnia's] appointee(s) providing a biography to be submitted in the refiled S-1 agreement."


Defendant James Mair Findlay and the Board Seat

74.     At all stages of the negotiations leading up to and including the execution of the 10/17/22 Terms, Defendants impressed upon the Plaintiffs being provided "a Director seat" was a material inducement in Defendants agreeing to invest three million five hundred thousand dollars ($3,500,000.00USD) in IHAC.

75.     At all stages of the negotiations leading up to and including the execution of the 10/17/22 Terms, Defendants impressed upon the Plaintiffs that Defendant's $3,500,000.00 investment in IHAC was contingent upon and required, that Defendant Findlay be placed on the Board of Directors of IHAC.

76.     As IHAC was preparing to become a public company listed on the Stock Market, IHAC recognized and appreciated that selection of appropriate directors for its Board of Directors was a strategically important decision of great significance.

77.     As IHAC was preparing to become a public company listed on the Stock Market, IHAC and BC engaged in a painstaking and costly process to select directors with not only extensive experience and skills relevant to the business of IHAC but also directors that exhibited maturity, professionalism, extraordinary business ethics, and social responsibility.

78.     IHAC fully understood that the choices it made when presenting those selected to its Board of Directors to the public could have a material impact not only in its future fund-raising ability but to the success of IHAC's goal of sourcing, negotiating, and consummating an initial business combination with one or more film studios or other businesses.

79.     As IHAC was preparing to become a public company listed on the Stock Market, IHAC was required to perform extensive due diligence on each Board of Director candidate, including Defendant Findlay.

80.     In the course of Findlay's background check, it was revealed that Findlay had a criminal record for a crime that reflected a) irresponsibility; b) immaturity; c) lack of discretion; and d) a substance abuse problem.

81.     Plaintiffs discussed these issues with the Defendants and explained that IHAC would never offer a Board of Director position to anyone with a criminal record and known substance abuse problem.

82.     Defendant Daniel Hansen, the CEO of Defendant Omnia, which appointed and employed Findlay as Omnia's Vice President of Investment and Finance, stated to Plaintiffs that Defendant Daniel Hansen understood and appreciated IHAC's concerns but again stated that

Omnia's $3,500,000.00 investment into IHAC was contingent upon, and required, Defendant Findlay's appointment to IHAC's Board of Directors.

83.     Further extensive discussions about Defendant Findlay's criminal record and his misuse of intoxicating substances occurred among IHAC, BC and their respective Directors and officers and, upon further assurances that Defendants were in the process of transferring three million five hundred thousand dollars ($3,500,000.00USD) to the Plaintiffs, Plaintiffs reluctantly agreed to allow Defendant Findlay to IHAC's Board of Directors.

84.     Plaintiff IHAC appointed Defendant Findlay to IHAC's Board of Directors following the execution of the 10/17/22 Terms and permitted Findlay to serve as a Director of IHAC until on or about November 24, 2023, a period exceeding one (1) year.

85.     Defendants Omnia, Daniel Hansen, and Findlay desired the Board Seat in order to rehabilitate Findlay's reputation in the business world which had previously been damaged by his criminal conviction, bad credit, and substance abuse issues.

86.     Defendants had no intention to perform its obligations under the 10/17/22 Terms and made all of their knowingly false representations to Plaintiffs in order to secure Findlay's Board Seat.

87.     Findlay's lack of experience, lack of maturity, lack of discretion, and lack of business ethics was made obvious on multiple occasions during his tenure on the Board of Directors of IHAC.

88.     Specifically, in or around November 2023, Findlay revealed that Findlay had "very bad credit" caused by Findlay's defaulting on one or more creditors of Findlay, and that Findlay was unable to rent any apartment in his own name because Findlay "won't survive the background check."

89.     Defendant Findlay then asked a fellow director and the CEO of IHAC to a) travel with Findlay to New York in order to locate an apartment for Findlay to live; b) fraudulently claim to the real estate agent/broker and the landlord/owner of each prospective apartment that said CEO is the applicant and c) to fraudulently fail to disclose to the real estate agent/broker and the landlord/owner of each prospective apartment that Findlay is the actual prospective tenant who will actually be residing in any such apartment.

90.     Specifically, Findlay, on multiple occasions, while acting in his official capacity as Director of IHAC, engaged in business meetings and business telephone calls, obviously under the influence of alcohol, marijuana, and/or controlled substances thereby causing him to slur his words, repeat himself, engage in long pauses between being asked to respond and responding, and discuss topics completely not relevant or germane to the subject of the business meeting(s) and/or business telephone call(s).

91.     Specifically, Findlay lacked comprehension of fundamental business operations and business ethics and needed to be repeatedly reminded of the laws and regulations governing the operation of a U.S. business organization that has registered with the SEC.

92.     Specifically, Findlay unreasonably demanded to be paid fees by IHAC that were never previously agreed to nor disclosed by IHAC in its SEC regulatory filings.

93.     Specifically, Findlay repeatedly complained to the Plaintiffs that he was being mistreated by his employer, Omnia, and that Defendant Omnia and Defendant Daniel Hansen, were "taking serious f**king advantage of [Findlay] by not paying [Findlay] more than [$100,000.00 in back pay]."

94.     Specifically, Findlay repeatedly requested that the Plaintiffs hire Findlay "full time" so that Findlay "could tell Daniel [Hansen] to f**k off and quit [Omnia] and come work here [at IHAC]."

95.     Specifically, Findlay claimed that when Findlay requested salary for "9 months of work" claimed owed to Findlay by Omnia, that Defendant Daniel Hansen threatened that if Findlay tried to collect said salary owed that, "[Defendant Daniel Hansen threatened] to send some guys to see [Findlay] [to commit violence against Findlay]."

96.     Specifically, Findlay repeatedly asked IHAC to violate the provisions of the SEC rules and regulations governing payments to directors absent disclosure in the proper registration documents.

97.     Specifically, Findlay, while fraudulently purporting to be acting on behalf of IHAC's Board of Directors, repeatedly made private requests for legal documents and legal templates from IHAC legal counsel.

98.     Findlay, on multiple occasions, was able to convince IHAC's legal counsel to supply blank legal documents and legal templates to Findlay even though Findlay was not using them in his official capacity as a director of IHAC but was rather illegally diverting and converting the business assets, financial resources, and retained legal counsel's billable time, for the use of the Defendants.

Defendant Omnia's Breach of the 10/17/22 Terms & Omnia's Defrauding of Omnia Investors

99.     In or about March 2023, the Defendants informed the Plaintiffs that Defendant Omnia was insolvent and unable to pay the Plaintiffs the three million five hundred thousand dollars ($3,500,000.00USD) as required by the 10/17/22 Terms and agreed to by the Defendants.

100.    In or about March 2023, the Defendants informed the Plaintiffs that Defendant Omnia refused to pay the Plaintiffs the three million five hundred thousand dollars ($3,500,000.00USD) as required by the 10/17/22 Terms.

101.    At no time between October 17, 2022, and the date(s) in or around March 2023 when the Defendants claimed they were insolvent and/or the Defendants refused to pay the Plaintiffs the monies due pursuant to the 10/17/22 Terms, did the Defendants either claim or send written notice that the Plaintiffs breached or were in default of the 10/17/22 Terms.

102.    In or about March 2023, the Defendants offered a subsequent and different reason for Defendants' breach of the 10/17/22 Terms.

103.    In or about March 2023, the Defendants informed the Plaintiffs that "Omnia used the investor funds earmarked for [IHAC] and used them for other [unspecified] investments [without disclosing such to its investors.]⁹"

104.    Defendant Omnia, as an international investment firm, has a legal duty and legal obligation to its investors to adequately identify and describe each and every investment that Omnia intends to invest its investor's funds in.

105.    Defendant Omnia, as an international investment firm, has a legal duty and legal obligation to obtain the informed consent of its investors **prior** to changing the use of and investment of said funds in an investment **other than** the investment said investors agreed to.

106.    If indeed the Defendants were truthfully stating that Omnia used the three million five hundred thousand dollars ($3,500,000.00USD) that it was contractually obligated to pay to the Plaintiffs, then the Defendants committed fraud, theft, and other criminal acts and/or torts against the Omnia Investors.

---

⁹ Defendant Daniel Hansen also stated another reason for Omnia's lack of funds to transfer to the Plaintiffs: Defendant Daniel Hansen was in the process of buying himself a personal jet airplane, and "was short on cash."

107. In or about November 2022, Plaintiffs again met with Defendants Daniel Hansen, Mette Abel Hansen, and James Findlay in person in NYC, who, during the NYC meetings, reaffirmed their commitment to the 10/17/22 Terms and ensuring that Plaintiffs had full funding to proceed with IPO.

108. After stating extensive excuses and justifications for breaching their obligations to the Plaintiffs, Defendant Omnia, Defendant Daniel Hansen, and Defendant Findlay informed the Plaintiffs that the Defendants *may* be able to invest one million dollars ($1,000,000.00USD) into IHAC so long as IHAC allows Defendant Findlay to remain on IHAC's Board of Directors.

109. Plaintiffs expressed their reluctance to enter into any additional agreements with the Defendants.

110. When Plaintiffs informed the Defendants that they were reluctant to enter into any additional agreements because Defendants repeatedly breached their prior agreements with and promises made to the Plaintiffs, Defendant Findlay stated to Plaintiffs, "If [Omnia] doesn't come through, me and my dad [will make payment and purchase the equity in IHAC]."

111. Based upon and in reliance of the representations made by the Defendants, the Plaintiffs reluctantly agreed to re-negotiate the previously agreed-to terms and began negotiating the terms of a new agreement between the Plaintiffs and the Defendants.

112. Based upon and in reliance of the representations made by Defendant Findlay, the Plaintiffs reluctantly agreed to re-negotiate the previously agreed-to terms and began negotiating the terms of a new agreement between the Plaintiffs and the Defendants.

May 12, 2023 Agreement

113.    In or about April and May 2023, Plaintiffs explained to Defendants Omnia, Defendant Daniel Hansen, and Defendant Findlay, that IHAC's IPO could be detrimentally affected by the Defendants prior breach of the 10/17/22 Terms but that, despite Defendants' breach, the Plaintiffs a) will agree to give the Defendants an additional opportunity to invest in IHAC before its IPO; and b) will allow Findlay to remain on IHAC's Board of Directors.

114.    Defendants stated to the Plaintiff's that if allowed "out" of their obligations under the 10/17/22 Terms, and IHAC would agree to allow Findlay on its Board of Directors, that the Defendants would "absolutely" transfer one million ($1,000,000.00USD) to the Plaintiffs.

115.    The Defendants, at the time of the negotiations with the Plaintiffs, knew that, in actuality, the Defendants did not have one million dollars ($1,000,000.00USD).

116.    The Defendants, at the time of the negotiations with the Plaintiffs, intentionally made the above material representations in order to convince, and indeed did convince, the Plaintiffs to keep Defendant Findlay on the IHAC Board of Directors.

117.    The Defendants, at the time of the negotiations with the Plaintiffs, intentionally deceived the Plaintiffs into believing that the Defendants were capable of investing one million dollars ($1,000,000.00USD) with IHAC while knowing that Defendants were actually financially insolvent.

118.    Despite knowingly being insolvent and without the ability to pay the Plaintiffs, on or about May 12, 2023, the Defendants entered into a written agreement with the Plaintiffs entitled, "Founder's Share and Warrant Pre-Purchase Agreement" in which the Defendants agree to pay to Plaintiff BC, the sum of one million dollars ($1,000,000.00USD) in exchange for equity in IHAC. ("5/12/23 Agreement")

119.    The 5/12/23 Agreement required, among other things, that Omnia, upon being given notice that NASDAQ approved IHAC to be listed on the Stock Market, "[Defendant Omnia] will have two calendar weeks…to initiate transfer of funds."

Defendants Breach the 5/12/23 Agreement

120.    On or about September 30, 2023, the Plaintiffs received written confirmation from governing regulatory agencies that IHAC was clear to proceed with IHAC's IPO.

121.    On or about September 30, 2023, the Plaintiffs, pursuant to the terms of the 5/12/23 Agreement, properly provided the Defendants with a Capital Call Notice, notifying Defendants that IHAC was clear to proceed with an imminent IPO and needed funds by October 31, 2023 or Defendants would be in breach of the 5/12/23 Agreement.

122.    The Defendants failed to transfer any funds to the Plaintiffs.

123.    On or about October 18, 2023, the Plaintiffs again notified the Defendants in writing that the Defendants were required to transfer funds on or before October 31, 2023 as provided for in the 5/12/23 Agreement.

124.    On or about October 25, 2023, the Plaintiffs again notified the Defendants in writing that the Defendants were required to transfer funds on or before October 31, 2023 as provided for in the 5/12/23 Agreement.

125.    On or about November 1, 2023, the Plaintiffs again notified the Defendants in writing that the Defendants were required to transfer funds as provided for in the 5/12/23 Agreement and that the Defendants were currently in breach of the 5/12/23 Agreement.

126.    On or about November 9, 2023, the Plaintiffs again notified the Defendants in writing that the Defendants were required to transfer funds as provided for in the 5/12/23 Agreement.

127.    On or about November 10, 2023, the Plaintiffs again notified the Defendants in writing that the Defendants were required to transfer funds as provided for in the 5/12/23 Agreement.

128.    On or about November 15, 2023, the Plaintiffs again notified the Defendants in writing that the Defendants were required to transfer funds as provided for in the 5/12/23 Agreement.

129.    Between November 16, 2023 to November 18, 2023, the Plaintiffs sent more than twenty (20) electronic messages to the Defendants demanding payment.

130.    On or about November 18, 2023, Defendant Daniel Hansen informed the Plaintiffs that Daniel Hansen had obtained a "bridge loan" and was waiting for the funds but said funds "didn't hit [Omnia's] account yet."

131.    On or about November 18, 2023, Defendant Daniel Hansen again promised to send one million dollars ($1,000,000.00) to the Plaintiffs once "the funds hit [Omnia's] account".

132.    The Defendants failed to transfer any funds to the Plaintiffs at any time.

133.    On or about November 19, 2023, in response to a request for payment, Defendant Daniel Hansen stated, "good luck suing my shell company in the [British Virgin Islands]."

134.    On or about November 26, 2023, Defendant Daniel Hansen stated that Omnia is insolvent and unable pay the monies owed to the Plaintiffs.

135.    At no time between May 12, 2023, and the date(s) in or around October when the Defendants claimed they were insolvent and/or the Defendants refused to pay the Plaintiffs the

monies due pursuant to the 5/12/23 Agreement, did the Defendants either claim or send written notice that the Plaintiffs breached or were in default of the 5/12/23 Agreement.

136.    On or about November 27, 2023, Defendant Daniel Hansen telephoned the Plaintiffs and stated that the Defendants "are wire transferring three hundred and fifty thousand dollars ($350,000.00USD) by end of day [November 27, 2023]."

137.    The Defendants failed to transfer any funds to the Plaintiffs on November 27, 2023 or on any other date.

138.    On or about November 28, 2023, Defendant Daniel Hansen telephoned the Plaintiffs and stated that the Defendants "are wire transferring three hundred and fifty thousand dollars ($350,000.00USD) by end of day [November 28, 2023]."

139.    The Defendants failed to transfer any funds to the Plaintiffs on November 28, 2023 or on any other date.

140.    On or about November 29, 2023, Defendant Daniel Hansen stated that Omnia is insolvent and unable pay the monies owed to the Plaintiffs.

141.    As of the date of this action, the Defendants have failed to pay the Plaintiffs any amount of the monies due under the 5/12/23 Agreement or otherwise.


<u>Defendant James Mair Findlay Promises to Pay $1,000,000.00USD to Plaintiffs</u>

142.    Throughout Defendant Findlay's tenure on IHAC's Board of Directors, Findlay repeatedly boasted to the Plaintiffs that Findlay's father, David Mair Findlay[10] ("David Findlay") is a wealthy investor and high-net-worth individual who serves as the President, Chief Executive

---

[10] David Mair Findlay is not a party to this litigation nor do the Plaintiffs believe at this time that David Mair Findlay was aware of or participated in the criminal, tortious and fraudulent conduct of the Defendants in this suit.

Officer, Chief Legal Officer, and Chairman of Nomura Corporate Research and Asset Management Inc, a well-known investment firm.

143.    Beginning in or around October 2023, Findlay, knowing that he and the other Defendants had no intention of paying the one million dollars ($1,000,000.00USD) owed to the Plaintiffs pursuant to the terms of the 5/12/23 Agreement, became increasingly agitated.

144.    Beginning in or around October 2023, Findlay became increasing anxious due to the escalation of his and his co-Defendants' criminal and tortious conduct.

145.    In an effort to lessen, minimize, and/or justify the conduct of Defendant Daniel Hansen in threatening physical violence against the Plaintiffs (while extorting and/or attempting to extort the Plaintiffs), Findlay informed the Plaintiffs that Defendant Daniel Hansen had threatened physical violence against Findlay in the past under similar circumstances while further implying that such conduct is a regular occurrence experienced by those doing business with Omnia and Daniel Hansen.

146.    In an effort to prevent or delay the Plaintiffs from filing suit against the Defendants for Defendants criminal and/or tortious conduct, Defendant Findlay began to make promises of payment to the Plaintiffs.

147.    Beginning in or around October 2023, as due dates for payment due from Defendants pursuant to the 5/12/23 elapsed without payment, Findlay stated to the Plaintiffs that, in the event Omnia breaches its agreement(s) with the Plaintiffs, that Findlay and James Findlay would "take over" Omnia's 5/12/13 Agreement with the Plaintiff and pay to the Plaintiff one million dollars ($1,000,000.00USD) in exchange for equity in IHAC.

148.    In or around November 2023, Findlay informed the Plaintiffs and Plaintiff's legal counsel that Findlay and David Findlay were going to pay the one million dollars

($1,000,000.00USD) due to the Plaintiffs pursuant to the 5/12/23 Agreement by entering into a new agreement with the Plaintiffs which provided that Findlay would be the recipient of the equity in IHAC in exchange for monies to be provided by David Findlay.

149.    On or about November 18, 2023, Findlay requested that the Plaintiffs engage Plaintiff's legal counsel to prepare a written agreement providing that Findlay will receive equity in IHAC in exchange for David Findley paying one million dollars ($1,000,000.00USD) to the Plaintiff BC.

150.    Plaintiffs' legal counsel prepared a contract memorializing the terms of the Findlay, David Findlay, BC, and IHAC agreement ("Findlay Agreement").

151.    Plaintiffs delivered the Findlay Agreement to Findlay and James Findlay.

152.    Defendant Findlay refused to execute the Findlay Agreement and refused to pay the one million dollars ($1,000,000.00USD) owed by the Defendants to the Plaintiffs.

Defendants Engage in Further Acts of Racketeering and Defrauding Other U.S. Businesses

153.    Defendants engaged in an extended deception of a U.S. law firm prior to and during its dealings with the Plaintiffs.

154.    Specifically, Defendants, with no intention of paying for the legal services it received, requested and received extensive legal services from a law firm located in the U.S.

155.    Specifically, Defendants, requested and received more than one million two hundred thousand dollars ($1,200,000.00) in legal services from said U.S. law firm, all the while knowing that the Defendants were financially insolvent and were unable to pay for said services.

156.    When said U.S. law firm requested payment, the Defendants informed said law firm that Defendants were insolvent and therefore were unable to pay for said services rendered.

157.    Defendants have never attempted to pay nor actually made payment for said legal services provided by said U.S. law firm.

## VI.  PLAINTIFFS CAUSES OF ACTION AGAINST THE DEFENDANTS

## FACTS COMMON TO ALL RICO CAUSES OF ACTION

158.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

159.    Defendant Omnia is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

160.    Defendant Daniel Hansen is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

161.    Defendant Mette Abel Hansen is a "culpable person" because she is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

162.    Defendant Findlay is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

163.    Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay did operate an "enterprise" because the association formed and operated by the Defendants to conduct racketeering activity is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (the "Enterprise") as defined by 18 U.S.C. § 1961(4).

164.    Defendant Omnia regularly participated in, directed, controlled, and profited from the Enterprise.

165.    Defendant Daniel Hansen regularly participated in, directed, controlled, and profited from the Enterprise.

166.    Defendant Mette Abel Hansen regularly participated in, directed, controlled, and profited from the Enterprise.

167.    Defendant Findlay regularly participated in, directed, controlled, and profited from the Enterprise.

168.    The racketeering offenses committed by the Defendants and the Enterprise affect interstate commerce as the Defendants and the Enterprise committed offenses against the Plaintiffs and the Plaintiffs are engaged in interstate commerce since the Plaintiffs a) are located in multiple states in the U.S. b) transact their business in and across multiple states in the U.S., c) had taken significant steps in the process of being a listed on the Stock Market; and d) had been approved by U.S. regulatory agencies to proceed with its initial public offering.[11]

169.    Defendants Omnia, Daniel Hansen, Mette Abel Hansen, Findlay, and the Enterprise did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) in that they did engaged in, attempted to engage in and/or conspired to engage in criminal extortion as defined in 18 U.S.C. § 1961(1)(A) and prohibited under 18 U.S.C. § 1951(a) by threatening physical violence against Plaintiffs thereby acting "in [a] way [that], obstructs, delay, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion…".

170.    Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay, and the Enterprise did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) in that they did

---

[11] Plaintiff IHAC is currently a public company listed on the NASDAQ Stock Market.

engage in fraud by wire as numerated 18 U.S.C. § 1961(1)(a) and prohibited under 18 U.S.C. §

1343 by transmitting documents, SMS messages, Apple messages, texts, voice mails, and emails

containing fraudulent representations or in furtherance of Defendants' scheme to defraud the

Plaintiffs by "wire, radio, or television communication" and did "devise[] or intend[] to devise any

scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent

pretenses, representations, or promises, [by] transmit[ting] or caus[ing] to be transmitted by means

of wire, radio, or television communication in interstate or foreign commence [] writings, signs,

signals, pictures, or sounds for purpose of executing such scheme or artifice…"

171.    The Defendants and the Enterprise engaged in a "pattern of racketeering activity"

by engaging in long-term organized conduct that took place over a period of one (1) year, in that

they transmitted numerous (more than 20) fraudulent material misrepresentations via wire,

engaged in numerous (more than 20) meetings with the Plaintiffs in which they made fraudulent

representations or in order to further their organized fraud, transmitted hundreds of emails via

containing either false information or in order to further their organized fraud, and engaged in

criminal extortion by threatening or implying the threat of physical violence with regards to

property, and all of the acts committed by the Defendants and the Enterprise "have the same or

similar purposes, results, participants, victims, methods of commission, or otherwise [are]

interrelated by distinguishing characteristics and are not isolated events."

172.    The duration of the Defendants' and the Enterprise's criminal conduct is more than

one (1) year, was and is continuing, and the Defendants and the Enterprise present a threat of

continuing said criminal conduct into the future.

173.    Defendants engaged in no less than two (2) or more acts of racketeering in that

Defendants, acting in concert, a) on or about October 17, 2022, executed a written document

containing material misrepresentations in order to obtain securities, trade secrets, and other business property belonging to the Plaintiffs and transmitted said document by wire (prohibited by 18 U.S.C. § 1343); b) on or about May 12, 2023, executed a written document containing material misrepresentations in order to obtain securities, trade secrets, and other business property belonging to the Plaintiffs and transmitted said document by wire (prohibited by 18 U.S.C. § 1343); and c) in or about November 2023, extorted and/or attempted to extort the Plaintiffs by threatening and/or implying the threat of physical violence against the Plaintiffs in a way that obstructed, delayed, and affected interstate commerce (prohibited by 18 U.S.C. § 1951(a)).

174.    Defendants' pattern of racketeering was committed against multiple victims, including, but not limited to, BC, IHAC, their owners, investors, directors, and officers.

175.    Defendants' pattern of racketeering was committed against multiple victims, including, but not limited to, a U.S. law firm, its owners, directors, officers, and employees.

176.    Defendants' pattern of racketeering was committed against multiple victims, including, but not limited to, the Omnia Investors and the Defrauded Companies.

177.    The Defendants, at all times, intended to commit a pattern of racketeering with regards to all of the victims of the Defendants' illegal conduct.

178.    The Defendants engaged in unlawful conduct in violation of 18 U.S.C. § 1962(c) in that the Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Plaintiffs.  Specifically the Defendants utilized their criminal Enterprise to send via wire, on at least two (2) or more occasions, documents and other information containing material misrepresentations in order to deceive the Plaintiffs; and when Plaintiffs attempted to recover property, money, and other business assets unlawfully taken and/or withheld by the Defendants

and their criminal Enterprise, the Defendants and the Enterprise then threatened and/or implied the threat of physical violence against the Plaintiffs in a way that obstructed, delayed, and affected interstate commerce.

179.    The Defendants engaged in unlawful conduct in violation of 18 U.S.C. § 1962(d) in that the Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).  Specifically, Defendants Omnia, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant Findlay conspired to, on two (2) or more occasions, transmit fraudulent and false misrepresentations of material facts via wire in order to obtain property from the Plaintiffs by deception.  Furthermore, Defendants Omnia, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant Findlay conspired to, on two (2) or more occasions, to threaten and/or imply threats of physical violence against the Plaintiffs in a way that obstructed, delayed, and affected interstate commerce.

RICO CAUSES OF ACTION

## COUNT I

### (CONDUCT OF OR PARTICIPATION IN THE CONDUCT OF ENTERPRISE'S AFFAIRS THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. 1962(c) (RICO))
### (Against All Defendants)

180.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

181.    This Count I is against Defendant Omnia, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Findlay (the "Count I Defendants").

182.    The Enterprise formed, operated, and participated in by the Count I Defendants engaged in, and whose activities affect, interstate commerce.  The Count I Defendants are

employed by or associated with the Enterprise and manage, operate, and profit from the operations of the Enterprise.

183.    The Count I Defendants, and each of them, took part in directing the affairs of the Enterprise and agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding and extorting the Plaintiffs. Specifically, the Defendants did plan, author, and deliver to the Plaintiffs multiple documents and other communications including emails and text messages which contained material misstatements in order to defraud the Plaintiffs and in order to threaten or imply the threat of physical violence against the Plaintiffs.

184.    The Defendants, and each of them, (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Enterprise are conducted; (3) knowingly implemented decisions of upper management; and (4) was indispensable to the achievement of the Enterprise's goals of defrauding and extorting the Plaintiffs.

185.    Pursuant to and in furtherance of their fraudulent scheme, the Count I Defendants committed multiple related acts of mail fraud in violation of 18 U.S.C. § 1343 and acts of extortion in violation of 18 U.S.C. § 1951(a).

186.    The acts of mail fraud in violation of 18 U.S.C. § 1343 and acts of extortion in violation of 18 U.S.C. § 1951(a) set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

187.    The Count I Defendants have directly or indirectly conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

188. The Count I Defendants, and each of them, committed the alleged predicate offenses as part of conducting or participating in the Enterprise, and, therefore, are liable for the violation of 18 U.S.C. § 1964(c) (RICO).

189. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property and have suffered losses exceeding three million five hundred dollars ($3,500,000.00USD).

190. As a proximate result of the Count I Defendants' and each of them, conduct of or participation in the long-running Enterprise, within the meaning of 18 U.S.C. § 1961(4), engaging in the continuing pattern of racketeering activity involving, among other unlawful acts, at least two acts of wire fraud in violation of 18 U.S.C. § 1343, Plaintiff sustained concrete and certain monetary damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

191. Therefore, the Count II Defendants, and each of them, are liable, jointly and severally, to the Plaintiffs under 18 U.S.C. § 1964(c) for the violation of 18 U.S.C. § 1962(d) (RICO) in the amount of triple Plaintiffs' losses, which amount is not less than ten million five hundred thousand dollars ($10,500,000.00US).

## COUNT II

### (CONDUCT OF OR PARTICIPATION IN THE CONDUCT OF ENTERPRISE'S AFFAIRS THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. 1962(d) (RICO))
### (Against All Defendants)

192. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

193. This Count II is against Defendant Omnia, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Findlay (the "Count II Defendants").

194.    The Enterprise formed, operated, and participated in by the Count II Defendants engaged in, and whose activities affect, interstate commerce.  The Count II Defendants are employed by or associated with the Enterprise and manage, operate, and profit from the operations of the Enterprise.

195.    As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).  Specifically, the Count II Defendants conspired to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity alleged hereinabove (18 U.S.C. § 1962(c)).

196.    The Count II Defendants have intentionally conspired and agreed to conduct and participate in the conduct of affairs of the Enterprise through a pattern of racketeering activity alleged hereinabove.  The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity set forth hereinabove and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate U.S.C. §§ 1962(b) and 1962(d).

197.    The Count II Defendants, and each of them, intended to further the wire fraud endeavors in violation of 18 U.S.C. § 1343.

198.    The Count II Defendants, and each of them, intended to further the extortion endeavors in violation of 18 U.S.C. § 1951(a).

199.    The Count II Defendants, and each of them, were during the Relevant Period, and at other times, aware of the essential nature and scope of the Enterprise and intended to participate in it.

200.    The Count II Defendants agreed to commit, or participate in, the violation of two or more predicate offenses, namely at least two acts of wire fraud in violation of 18 U.S.C. § 1343.

201.    As a direct and proximate result of the Count II Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), the Plaintiffs have been damaged in an amount of at least three million five hundred thousand dollars ($3,500,000.00USD).

202.    As a proximate result of the Count II Defendants' conspiracy to conduct or participate in the long-running Enterprise, within the meaning of 18 U.S.C. § 1961(4), engaging in the continuing pattern of racketeering activity involving, among other unlawful acts, at least two acts of wire fraud in violation of 18 U.S.C. § 1343, Plaintiff sustained concrete and certain monetary damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

203.    Therefore, the Count II Defendants, and each of them, are liable, jointly and severally, to the Plaintiffs under 18 U.S.C. § 1964(c) for the violation of 18 U.S.C. § 1962(d)(RICO) in the amount of triple Plaintiffs' losses, which amount is not less than ten million five hundred thousand dollars ($10,500,000.00USD).

OTHER CAUSES OF ACTION

## COUNT III
### (FRAUD)
### (Against Defendant Omnia Global a.k.a. Omnia Schweiz GmbH)

204.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

205.    This Count III is against Defendant Omnia Global a.k.a. Omnia Schweiz GmbH (the "Count III Defendant").

206.    The Count III Defendant stated that the Count III Defendant was a family business organization possessing and/or controlling "hundreds of millions of dollars" in assets.

207.    The Count III Defendant stated that the Count III Defendant had sufficient assets to invest three million five hundred thousand dollars ($3,500,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

208.    The Count III Defendant stated that the Count III Defendant had sufficient assets to invest one million dollars ($1,000,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

209.    The Count III Defendant signed no less than two (2) agreements memorializing the terms stated above (10/17/22 Terms and 5/12/23 Agreement).

210.    The Count III Defendant, at the times it made the above statements to the Plaintiffs, did not have or control, nor did believe it had or controlled, the assets it claimed it owned or controlled.

211.    The Count III Defendant, at all times during the Relevant Period, knew that the statements the Count III Defendant made to the Plaintiffs were false.

212.    The Count III Defendant knew that the representations the Count III Defendant made to the Plaintiffs and memorialized in the 10/17/22 Terms and the 5/12/23 Agreement were false at that time it executed the 10/17/22 Terms and the 5/12/23 Agreement.

213.    The Count III Defendant made and continued to make the same false representations that it had or controlled sufficient assets to carry out the obligations it committed to for an extended period of at least one (1) year.

214.    The Count III Defendant sent dozens of electronic mails, text messages, and WhatsApp messages to the Plaintiffs representing that the Count III Defendant would be sending

the monies the Count III Defendant committed to in its memorialized agreements, in the statements made during the NYC Meetings, in the statements made in the Swiss meetings, and in other statements made by the Count III Defendant to the Plaintiffs.

215.   The Count III Defendant knew that the statements it was making to the Plaintiffs were false at the time it made the statements to the Plaintiffs.

216.   The Count III Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs out of property and/or equity in IHAC worth at least three million five hundred thousand dollars ($3,500,000.00USD).

217.   The Count III Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs to wit:  The Count III Defendant made false representations to the Plaintiffs in order to secure the Board Seat at IHAC for Defendant Findlay.

218.   The Count III Defendant was given a Board Seat at IHAC by the Plaintiffs in reliance on the false statements made by the Count III Defendant.

219.   The Defendant Omnia held the Board Seat at IHAC for more than one (1) year.

220.   As a result of the false statements, material misrepresentations or omission of material facts made by the Count III Defendant, the Plaintiff suffered damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

## COUNT IV
### (FRAUD)
### (Against Defendant Daniel Hansen)

221.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

222.   This Count IV is against Defendant Daniel Hansen (the "Count IV Defendant").

223.    The Count IV Defendant stated that Defendant Omnia is a family business organization possessing and/or controlling "hundreds of millions of dollars" in assets.

224.    The Count IV Defendant stated that the Defendant Omnia had sufficient assets to invest three million five hundred thousand dollars ($3,500,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

225.    The Count IV Defendant stated that Defendant Omnia had sufficient assets to invest one million dollars ($1,000,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

226.    The Count IV Defendant signed no less than two (2) agreements memorializing the terms stated above (10/17/22 Terms and 5/12/23 Agreement).

227.    The Count IV Defendant, at the times he made the above statements to the Plaintiffs knew that Defendant Omnia did not have or control, nor did believe it had or controlled, the assets the Count IV Defendant claimed it owned or controlled.

228.    The Count IV Defendant, at all times during the Relevant Period, knew that the statements the Count IV Defendant made to the Plaintiffs were false.

229.    The Count IV Defendant knew that the representations the Count IV Defendant made to the Plaintiffs and memorialized in the 10/17/22 Terms and the 5/12/23 Agreement were false at that time the Count IV Defendant executed the 10/17/22 Terms and the 5/12/23 Agreement.

230.    The Count IV Defendant made and continued to make the same false representations that Defendant had or controlled sufficient assets to carry out the obligations it committed to for an extended period of at least one (1) year.

231.    The Count IV Defendant sent dozens of electronic mails, text messages, and WhatsApp messages to the Plaintiffs representing that Defendant Omnia would be sending the monies that Defendant Omnia committed to in their memorialized agreements, in the statements made during the NYC Meetings, in the statements made in the Swiss meetings, and in other statements made by the Count IV Defendant to the Plaintiffs.

232.    The Count IV Defendant knew that the statements he was making to the Plaintiffs were false at the time he made the statements to the Plaintiffs.

233.    The Count IV Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs out of property and/or equity in IHAC worth at least three million five hundred thousand dollars ($3,500,000.00USD).

234.    The Count IV Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs to wit:  The Count IV Defendant made false representations to the Plaintiffs in order to secure the Board Seat at IHAC for Defendant Findlay and to engage in the theft of trade secrets of the Plaintiffs.

235.    Defendant Omnia was given a Board Seat at IHAC by the Plaintiffs in reliance on the false statements made by the Count IV Defendant.

236.    Defendant Omnia and Defendant Findlay held the Board Seat at IHAC for more than one (1) year.

237.    As a result of the false statements, material misrepresentations or omission of material facts made by the Count IV Defendant, the Plaintiff suffered damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

## COUNT V
### (FRAUD)
### (Against Defendant James Mair Findlay)

238.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

239.     This Count V is against Defendant James Mair Findlay (the "Count V Defendant").

240.     The Count V Defendant stated that Defendant Omnia is a family business organization possessing and/or controlling "hundreds of millions of dollars" in assets.

241.     The Count V Defendant stated that the Defendant Omnia had sufficient assets to invest three million five hundred thousand dollars ($3,500,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

242.     The Count V Defendant stated that Defendant Omnia had sufficient assets to invest one million dollars ($1,000,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

243.     The Count V Defendant signed no less than two (2) agreements memorializing the terms stated above (10/17/22 Terms and 5/12/23 Agreement).

244.     The Count V Defendant, at the times he made the above statements to the Plaintiffs knew that Defendant Omnia did not have or control, nor did believe it had or controlled, the assets the Count V Defendant claimed it owned or controlled.

245.     The Count V Defendant, at all times during the Relevant Period, knew that the statements the Count V Defendant made to the Plaintiffs were false.

246.     The Count V Defendant knew that the representations the Count IV Defendant made to the Plaintiffs and memorialized in the 10/17/22 Terms and the 5/12/23 Agreement were false at that time the Count IV Defendant executed the 10/17/22 Terms and the 5/12/23 Agreement.

247.     The Count V Defendant made and continued to make the same false representations that Defendant had or controlled sufficient assets to carry out the obligations it committed to for an extended period of at least one (1) year.

248.     The Count V Defendant sent dozens of electronic mails, text messages, and WhatsApp messages to the Plaintiffs representing that Defendant Omnia would be sending the monies that Defendant Omnia committed to in their memorialized agreements, in the statements made during the NYC Meetings, in the statements made in the Swiss meetings, and in other statements made by the Count V Defendant to the Plaintiffs.

249.     The Count V Defendant knew that the statements he was making to the Plaintiffs were false at the time he made the statements to the Plaintiffs.

250.     The Count V Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs out of property and/or equity in IHAC worth at least three million five hundred thousand dollars ($3,500,000.00USD).

251.     The Count V Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs to wit:  The Count V Defendant made false representations to the Plaintiffs in order to secure the Board Seat at IHAC for Defendant Findlay.

252.     Defendant Omnia was given a Board Seat at IHAC by the Plaintiffs in reliance on the false statements made by the Count V Defendant.

253.     Defendant Omnia and Defendant Findlay held the Board Seat at IHAC for more than one (1) year.

254.    As a result of the false statements, material misrepresentations or omission of material facts made by the Count V Defendant, the Plaintiff suffered damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

**COUNT VI**
**(FRAUD)**
**(Against Defendant Mette Abel Hansen)**

255.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

256.    This Count VI is against Defendant Mette Abel Hansen (the "Count V Defendant").

257.    The Count VI Defendant attended and participated in the NYC Meetings and the Swiss Meetings and participated in the electronic communications between the Defendants and the Plaintiffs.

258.    The Count VI Defendant is the Co-Founder and Chief Operating Officer ("COO") of Defendant Omnia, and has stated that she is responsible for "oversee[ing] all operations for the business, including finance, HR, technology, and marketing functions" and further has stated that, "In addition, [she] works alongside [co-defendant] CEO Daniel Hansen to manage relations with the firm's global network of brokers, founder partners and consultants."

259.    The Count VI Defendant attended and participated in meetings where her co-Defendants stated that Defendant Omnia is a family business organization possessing and/or controlling "hundreds of millions of dollars" in assets.

260.    The Count VI Defendant attended and participated in meetings where her co-Defendants stated that the Defendant Omnia had sufficient assets to invest three million five hundred thousand dollars ($3,500,000.00USD) with the Plaintiffs in exchange for a) an equity

ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

261.   The Count VI Defendant attended and participated in meetings where her co-Defendants stated that Defendant Omnia had sufficient assets to invest one million dollars ($1,000,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

262.   The Count VI Defendant attended and participated in meetings where her co-Defendants signed no less than two (2) agreements memorializing the terms stated above (10/17/22 Terms and 5/12/23 Agreement).

263.   The Count VI Defendant, at the times the above statements were made to the Plaintiffs, knew that Defendant Omnia did not have or control, nor did believe it had or controlled, the assets she and her co-Defendants claimed it owned or controlled.

264.   The Count VI Defendant, at all times during the Relevant Period, knew that the statements the Defendants made to the Plaintiffs were false.

265.   The Count VI Defendant knew that the representations of the Defendants made to the Plaintiffs and memorialized in the 10/17/22 Terms and the 5/12/23 Agreement were false at that time the Defendants executed the 10/17/22 Terms and the 5/12/23 Agreement.

266.   The Count VI Defendant made and continued to make the same false representations that Defendant had or controlled sufficient assets to carry out the obligations it committed to for an extended period of at least one (1) year.

267.   The Count VI Defendant was aware that the Defendants were, and/or participated with the Defendants in, sending dozens of electronic mails, text messages, and WhatsApp messages to the Plaintiffs representing that Defendant Omnia would be sending the monies that

Defendant Omnia committed to in its memorialized agreements, in the statements made during the NYC Meetings, in the statements made in the Swiss meetings, and in other statements made by the Defendants to the Plaintiffs.

268.   The Count VI Defendant knew that the statements she was making to the Plaintiffs and that her co-Defendants were making to the Plaintiffs were false at the time the statements were made to the Plaintiffs.

269.   The Count VI Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs out of property and/or equity in IHAC worth at least three million five hundred thousand dollars ($3,500,000.00USD).

270.   The Count VI Defendant made the false statements to the Plaintiffs in order to defraud the Plaintiffs to wit:  The Count VI Defendant made false representations to the Plaintiffs in order to secure the Board Seat at IHAC for Defendant Findlay and to engage in theft of trade secrets of the Plaintiffs.

271.   Defendant Omnia was given a Board Seat at IHAC by the Plaintiffs in reliance on the false statements made by the Count VI Defendant.

272.   Defendant Omnia and Defendant Findlay held the Board Seat at IHAC for more than one (1) year.

273.   As a result of the false statements, material misrepresentations or omission of material facts made by or that were made in the presence of and with the acquiescence of the Count VI Defendant, the Plaintiff suffered damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

## COUNT VII
## (CIVIL CONSPIRACY)
## (Against All Defendants)

274. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

275. This Count VII is against Defendant Omnia Global, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Findlay (the "Count VII Defendants").

276. The Count VII Defendants made an agreement by and between the Count VII Defendants to state material misstatements of fact to the Plaintiffs in order to obtain business property of the Plaintiffs, equity in IHAC, trade secrets belonging to the Plaintiffs, and a valuable Board of Director's seat on the Board of Directors of IHAC.

277. The Count VII Defendants committed several overt acts in furtherance of their conspiracy to defraud the Plaintiffs to wit:  The Count VII Defendants made material misstatements of fact to the Plaintiffs orally and in writing, transmitted via wire documents containing material misstatements of fact, executed documents containing material misstatements of facts, committed acts of wire fraud in connection with the conspiracy by transmitting the 10/17/22 Terms and the 5/12/23 Agreement via wire to the Plaintiffs, and committed acts of extortion in connection with the conspiracy by threatening or implying the threat of physical violence against the Plaintiffs.

278. The Count VII Defendants, each and every one of them, intentionally and knowingly participated in furtherance of the Count VII Defendants' plan to defraud the Plaintiffs.

279. As a result of the civil conspiracy and acts in furtherance of the conspiracy, the Count VII Defendants caused damages to the Plaintiffs of at least three million five hundred thousand dollars ($3,500,000.00USD).

## COUNT VIII
## (THEFT/CONVERSION OF BUSINESS PROPERTY)
### (Against All Defendants)

280.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

281.     This Count VIII is against Defendant Omnia Global, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Findlay (the "Count VIII Defendants").

282.     The Count VIII Defendants were given the Board Seat on Plaintiff IHAC's Board of Directors and allowed to maintain and occupy the Board Seat for more than one (1) year.

283.     The Count VIII Defendants while falsely purporting to be acting in an official capacity of IHAC as an IHAC Director made multiple requests of Plaintiff IHAC's legal counsel ("IHAC Legal Counsel") for legal documents and legal document templates to be supplied by IHAC Legal Counsel to the Count VIII Defendants.

284.     IHAC Legal Counsel supplied legal documents and legal document templates to the Count VIII Defendants believing that IHAC Legal Counsel was delivering said documents and templates to Plaintiff IHAC but in actuality they were being diverted for the unauthorized use of the Count VIII Defendants.

285.     IHAC Legal Counsel charged legal fees to the Plaintiffs for the preparation and transmission of said documents and templates.

286.     Upon information and belief, the Count VIII Defendants were using said documents and templates for use in businesses other than IHAC including, but not limited to, Defendant Omnia's businesses.

287.    As a result of the Count VIII Defendants' theft and conversion of the business assets belonging to Plaintiffs, the Count VIII Defendants caused damages to the Plaintiffs of at least two thousand dollars ($2,000.00USD).

## COUNT IX
### (THEFT/CONVERSION OF BUSINESS PROPERTY)
### (Against Defendant James Mair Findlay)

288.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

289.    This Count IX is against Defendant James Mair Findlay (the "Count IX Defendant").

290.    The Count IX Defendant was given the Board Seat on Plaintiff IHAC's Board of Directors and allowed to maintain and occupy the Board Seat for more than one (1) year.

291.    The Count IX Defendant while falsely purporting to be acting in an official capacity of IHAC as an IHAC Director made multiple requests of Plaintiff IHAC's legal counsel ("IHAC Legal Counsel") for legal documents and legal document templates to be supplied by IHAC Legal Counsel to the Count IX Defendant.

292.    IHAC Legal Counsel supplied legal documents and legal document templates to the Count IX Defendant believing that IHAC Legal Counsel was delivering said documents and templates to Plaintiff IHAC but in actuality they were being diverted for the unauthorized use of the Count IX Defendant.

293.    IHAC Legal Counsel charged legal fees to the Plaintiffs for the preparation and transmission of said documents and templates.

294.    Upon information and belief, the Count IX Defendant was using said documents and templates for use in businesses other than IHAC including, but not limited to, Defendant Omnia's businesses.

295.    As a result of the Count IX Defendants' theft and conversion of the business assets belonging to the Plaintiffs, the Count IX Defendant caused damages to the Plaintiffs of at least two thousand dollars ($2,000.00USD).

## COUNT X
### (MISAPPROPRIATION OF TRADE SECRETS)
### (Against All Defendants)

296.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

297.    This Count X is against Defendant Omnia Global, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Findlay (the "Count X Defendants").

298.    The Count X Defendants maintained and occupied the Board Seat on Plaintiff IHAC's Board of Directors from on or about October 17, 2022, until on or about November 24, 2023, a period of more than one (1) year.

299.    During the time the Count X Defendants maintained and occupied the Board Seat, they were permitted to learn, and did learn, of various and numerous valuable and highly confidential trade secrets and other valuable confidential intellectual property that belonged to Plaintiff IHAC ("Trade Secrets").

300.    The Trade Secrets owned and possessed by Plaintiff IHAC were proprietary and unknown to the public, IHAC's competitors, and to the Count X Defendants prior to them learning of them from Plaintiff IHAC.

301.    The Count X Defendants misused their Board Seat in order to listen to, acquire, and misappropriate the Trade Secrets in order to unlawfully and without the authorization of IHAC, utilize the Trade Secrets in the Count X Defendants' other business entities that were competitors of the Plaintiffs.

302.    The Count X Defendants learned of the Trade Secrets through fraud, deception, and other tortious conduct against the Plaintiffs as stated more fully above.

303.    The Count X Defendants learned of the Trade Secrets while acting under multiple fiduciary duties owed to Plaintiff IHAC including the Duty of Loyalty.

304.    Specifically, the Count X Defendants learned Trade Secrets about, among other things, the Plaintiffs business strategy, availability and pricing of assets IHAC was planning on acquiring, the names and contact information of buyers and sellers of assets that IHAC had interest in, and other valuable confidential and proprietary Trade Secrets (to be revealed to this Court under seal and/or *in camera* in order to protect the secrecy of said Trade Secrets).

305.    As a result of the Count X Defendants' misappropriation of Plaintiff IHAC's trade secrets, the Count X Defendants caused damages to the Plaintiffs of at least fifty million dollars ($50,000,000.00USD).


## COUNT XI
### (MISAPPROPRIATION OF TRADE SECRETS)
### (Against Defendant James Mair Findlay)

306.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

307.    This Count XI is against Defendant James Mair Findlay (the "Count XI Defendant").

308.    The Count XI Defendant maintained and occupied the Board Seat on Plaintiff IHAC's Board of Directors from on or about October 17, 2022, until on or about November 24, 2023, a period of more than one (1) year.

309.    During the time the Count XI Defendant maintained and occupied the Board Seat, he was permitted to learn, and did learn, of various and numerous valuable and highly confidential trade secrets and other valuable confidential intellectual property that belonged to Plaintiff IHAC ("Trade Secrets").

310.    The Trade Secrets owned and possessed by Plaintiff IHAC were proprietary and unknown to the public, IHAC's competitors, and to the Count XI Defendant prior to him learning of them from Plaintiff IHAC.

311.    The Count XI Defendant misused his Board Seat in order to listen to, acquire, and misappropriate the Trade Secrets in order to unlawfully and without the authorization of IHAC, utilize the Trade Secrets in the Count XI Defendant's other business entities that were competitors of the Plaintiffs.

312.    The Count XI Defendant learned of the Trade Secrets through fraud, deception, and other tortious conduct against the Plaintiffs as stated more fully above.

313.    The Count XI Defendant learned of the Trade Secrets while acting under multiple fiduciary duties owed to Plaintiff IHAC including the Duty of Loyalty.

314.    Specifically, the Count XI Defendant learned Trade Secrets about, among other things, the Plaintiffs business strategy, availability and pricing of assets IHAC was planning on acquiring, the names and contact information of buyers and sellers of assets that IHAC had interest in, and other valuable confidential and proprietary Trade Secrets (to be revealed to this Court under seal and/or *in camera* in order to protect the secrecy of said Trade Secrets).

315.     As a result of the Count XI Defendant's misappropriation of Plaintiff IHAC's trade secrets, the Count XI Defendant caused damages to the Plaintiffs of at least fifty million dollars ($50,000,000.00USD).


**COUNT XII**
**(BREACH OF FIDUCIARY DUTY)**
**(Against Defendant Omnia Global)**

316.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

317.     This Count XII is against Defendant Omnia Global (the "Count XII Defendant").

318.     The Count XII Defendant maintained and occupied the Board Seat on Plaintiff IHAC's Board of Directors from on or about October 17, 2022, until on or about November 24, 2023, a period of more than one (1) year.

319.     The Director position on Plaintiff IHAC's Board of Directors is one of a fiduciary relationship between the Director and the organization (Plaintiff IHAC) and thereby creates duties and obligations of the Director.

320.     The Count XII Defendant owed a duty of loyalty to Plaintiff IHAC.

321.     The Count XII Defendant owed a duty of care to Plaintiff IHAC.

322.     The Count XII Defendant owed a duty to act in good faith to Plaintiff IHAC.

323.     During the time the Count XII Defendant maintained and occupied the Board Seat, the Count XII Defendant committed RICO violations against Plaintiff IHAC including mail fraud and extortion as more fully described above.

324.    During the time the Count XII Defendant maintained and occupied the Board Seat, the Count XII Defendant committed civil conspiracy against Plaintiff IHAC as more fully described above.

325.    During the time the Count XII Defendant maintained and occupied the Board Seat, the Count XII Defendant stole and/or converted business property belonging to Plaintiff IHAC as more fully described above.

326.    During the time the Count XII Defendant maintained and occupied the Board Seat, the Count XII Defendant misappropriated Trade Secrets belonging to Plaintiff IHAC as more fully described above.

327.    In committing the acts described in this Count XII and elsewhere in this Complaint, the Count XII Defendant breached its duty of loyalty owed to Plaintiff IHAC.

328.    In committing the acts described in this Count XII and elsewhere in this Complaint, the Count XII Defendant breached its duty of care owed to Plaintiff IHAC.

329.    In committing the acts described in this Count XII and elsewhere in this Complaint, the Count XII Defendant breached its duty to act in good faith owed to Plaintiff IHAC.

330.    As a result of the Count XII Defendant's breaches of its fiduciary duties owed to Plaintiff IHAC, the Count XII Defendant caused damages to the Plaintiff IHAC of at least fifty million dollars ($50,000,000.00USD).


## COUNT XIII
### (BREACH OF FIDUCIARY DUTY)
### (Against Defendant James Mair Findlay)

331.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein .

332.    This Count XIII is against Defendant James Mair Findlay (the "Count XIII Defendant").

333.    The Count XIII Defendant maintained and occupied the Board Seat on Plaintiff IHAC's Board of Directors from on or about October 17, 2022, until on or about November 24, 2023, a period of more than one (1) year.

334.    The Director position on Plaintiff IHAC's Board of Directors is one of a fiduciary relationship between the Director and the organization (Plaintiff IHAC) and thereby creates duties and obligations of the Director.

335.    The Count XIII Defendant owed a duty of loyalty to Plaintiff IHAC.

336.    The Count XIII Defendant owed a duty of care to Plaintiff IHAC.

337.    The Count XIII Defendant owed a duty to act in good faith to Plaintiff IHAC.

338.    During the time the Count XIII Defendant maintained and occupied the Board Seat, the Count XIII Defendant committed RICO violations against Plaintiff IHAC including mail fraud and extortion as more fully described above.

339.    During the time the Count XIII Defendant maintained and occupied the Board Seat, the Count XIII Defendant committed civil conspiracy against Plaintiff IHAC as more fully described above.

340.    During the time the Count XIII Defendant maintained and occupied the Board Seat, the Count XIII Defendant stole and/or converted business property belonging to Plaintiff IHAC as more fully described above.

341.    During the time the Count XIII Defendant maintained and occupied the Board Seat, the Count XIII Defendant misappropriated Trade Secrets belonging to Plaintiff IHAC as more fully described above.

342.    In committing the acts described in this Count XIII and elsewhere in this Complaint, the Count XIII Defendant breached his duty of loyalty owed to Plaintiff IHAC.

343.    In committing the acts described in this Count XIII and elsewhere in this Complaint, the Count XII Defendant breached his duty of care owed to Plaintiff IHAC.

344.    In committing the acts described in this Count XIII and elsewhere in this Complaint, the Count XIII Defendant breached his duty to act in good faith owed to Plaintiff IHAC.

345.    As a result of the Count XIII Defendant's breaches of its fiduciary duties owed to Plaintiff IHAC, the Count XIII Defendant caused damages to the Plaintiff IHAC of at least fifty million dollars ($50,000,000.00USD).


## COUNT XIV
### (BREACH OF CONTRACT – 10/17/22 TERMS)
### (Against Defendant Omnia Global)

346.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

347.    This Count XIV is against Defendant Omnia Global (the "Count XIV Defendant").

348.    The 10/17/22 Terms required that the Count XIV Defendant pay three million five hundred thousand dollars ($3,500,000.00USD) to the Plaintiffs.

349.    The Count XIV Defendant breached the terms of said 10/17/22 Terms in that said Count XIV Defendant never paid three million five hundred thousand dollars ($3,500,000.00USD) to the Plaintiffs.

350.    As a direct and proximate cause of Count XIV Defendant's breach of contract, the Plaintiffs sustained damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

## <u>COUNT XV</u>
### (BREACH OF CONTRACT – 10/17/22 TERMS)
### (Against Defendant Daniel Hansen)

351.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

352.    This Count XV is against Defendant Daniel Hansen (the "Count XV Defendant").

353.    Defendant Omnia is the alter ego of the Count XV Defendant.

354.    The 10/17/22 Terms required that the Count XV Defendant pay three million five hundred thousand dollars ($3,500,000.00USD) to the Plaintiffs.

355.    The Count XV Defendant executed the written 10/17/22 document.

356.    The Count XV Defendant breached the terms of said 10/17/22 Terms in that said Count XV Defendant never paid three million five hundred thousand dollars ($3,500,000.00USD) to the Plaintiffs.

357.    As a direct and proximate cause of Count XV Defendant's breach of contract, the Plaintiffs sustained damages of at least three million five hundred thousand dollars ($3,500,000.00USD).

## <u>COUNT XVI</u>
### (BREACH OF CONTRACT – 5/12/23 AGREEMENT)
### (Against Defendant Omnia Global)

358.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

359.    This Count XVI is against Defendant Omnia Global (the "Count XIV Defendant").

360.    The 5/12/23 Agreement required that the Count XVI Defendant pay one million dollars ($1,000,000.00USD) to the Plaintiffs.

361.    The Count XVI Defendant breached the terms of said 5/12/23 Agreement in that said Count XVI Defendant never paid one million dollars ($1,000,000.00USD) to the Plaintiffs.

362.    As a direct and proximate cause of Count XIV Defendant's breach of contract, the Plaintiffs sustained damages of at least one million dollars ($1,000,000.00USD).

## <u>COUNT XVII</u>
**(BREACH OF CONTRACT – 5/12/23 AGREEMENT)**
**(Against Defendant Daniel Hansen)**

363.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

364.    This Count XVII is against Defendant Daniel Hansen (the "Count XVII Defendant").

365.    Defendant Omnia is the alter ego of the Count XVII Defendant.

366.    The 5/12/23 Agreement required that the Count XVII Defendant pay one million dollars ($1,000,000.00USD) to the Plaintiffs.

367.    The Count XVII Defendant executed the written 5/12/23 Agreement.

368.    The Count XVII Defendant breached the terms of said 5/12/23 Agreement in that said Count XVII Defendant never paid one million dollars ($1,000,000.00USD) to the Plaintiffs.

369.    As a direct and proximate cause of Count XVII Defendant's breach of contract, the Plaintiffs sustained damages of at least one million dollars ($1,000,000.00USD).

## COUNT XVIII
## (BREACH OF CONTRACT)
### (Against Defendant James Mair Findlay)

370.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

371.    This Count XVIII is against Defendant James Mair Findlay (the "Count XVIII Defendant").

372.    The 5/12/23 Agreement required that Defendant Omnia pay one million dollars ($1,000,000.00USD) to the Plaintiffs.

373.    Defendant Omnia executed the written 5/12/23 Agreement.

374.    The Defendant Omnia breached the terms of said 5/12/23 Agreement in that said Defendant Omnia never paid one million dollars ($1,000,000.00USD) to the Plaintiffs.

375.    After Defendant Omnia breached the terms of the 5/12/23 Agreement, the Count XIII Defendant promised to pay the one million dollars ($1,000,000.00USD) to the Plaintiffs.

376.    The Count XIII Defendant stated to the Plaintiffs that, "if [Defendant Findlay is allowed to remain on the Board of Directors of Plaintiffs] then [Defendant Findlay's father, David Mair Findlay] will pay [to Plaintiffs] the million."

377.    The Plaintiffs granted the Count XIII Defendant's request and specifically performed by allowing the Count XIII Defendant to remain on the Board of Directors as a Director of IHAC.

378.     Neither the Count XIII Defendant nor the father of the Count XIII Defendant, David Mair Findlay, ever paid the one million dollars ($1,000,000.00USD) to the Plaintiffs.

379.     As a direct and proximate cause of Count XVIII Defendant's breach of contract, the Plaintiffs sustained damages of at least one million dollars ($1,000,000.00USD).

## COUNT XIX
### (DETRIMENTAL RELIANCE)
### (Against All Defendants)

380.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

381.     This Count XIX is against Defendant Omnia Global, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Finlay (the "Count XIX Defendants").

382.     The Count XIX Defendants stated that the Count XIX Defendants were a family business organization possessing and/or controlling "hundreds of millions of dollars" in assets.

383.     The Count XIX Defendants stated that the Count III Defendant had sufficient assets to invest three million five hundred thousand dollars ($3,500,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

384.     The Count XIX Defendants stated that the Count III Defendant had sufficient assets to invest one million dollars ($1,000,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

385.     The Count XIX Defendants signed no less than two (2) agreements memorializing the terms stated above (10/17/22 Terms and 5/12/23 Agreement).

386.    The Count XIX Defendants, at the times it made the above statements to the Plaintiffs did not have or control, nor did believe it had or controlled, the assets it claimed it owned or controlled.

387.    The Count XIX Defendants, at all times during the Relevant Period, knew that the statements the Count XIX Defendants made to the Plaintiffs were false.

388.    The Count XIX Defendants knew that the representations the Count XIX Defendants made to the Plaintiffs and memorialized in the 10/17/22 Terms and the 5/12/23 Agreement were false at that time it executed the 10/17/22 Terms and the 5/12/23 Agreement.

389.    The Count XIX Defendants made and continued to make the same false representations that it had or controlled sufficient assets to carry out the obligations it committed to for an extended period of at least one (1) year.

390.    The Count XIX Defendants sent dozens of electronic mails, text messages, and WhatsApp messages to the Plaintiffs representing that the Count XIX Defendants would be sending the monies the Count XIX Defendants committed to in its memorialized agreements, in the statements made during the NYC Meetings, in the statements made in the Swiss meetings, and in other statements made by the Count XIX Defendants to the Plaintiffs.

391.    The Count XIX Defendants knew that the statements they were making to the Plaintiffs were false at the time they made the statements to the Plaintiffs.

392.    The Plaintiffs detrimentally relied on the false oral and written statements made by the Count XIX Defendants.

393.    In reliance of the false oral and written statements made by the Count XIX Defendants to the Plaintiffs, the Count XIX Defendants were given a Board Seat at IHAC by the Plaintiffs.

394.    The Count XIX Defendants held the Board Seat at IHAC for more than one (1) year.

395.    During the more than one (1) year period that the Count XIX Defendants had the Board Seat, the Count XIX Defendants were benefited in that Defendant Findlay was able to rehabilitate damage to his reputation he suffered as a result of his criminal record, poor credit, and substance abuse problems.

396.    During the more than one (1) year period that the Count XIX Defendants had the Board Seat, the Count XIX Defendants were benefited they stole trade secrets and other business property belonging to the Plaintiffs.

397.    As a result of the false statements, material misrepresentations or omission of material facts made by the Count XIX Defendants and the Plaintiffs relying on them to their detriment, the Plaintiffs suffered damages of at least fifty million dollars ($50,000,000.00USD).


## COUNT XX
### (DETRIMENTAL RELIANCE)
### (Against Defendant James Mair Findlay)

398.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

399.    This Count XX is against Defendant James Mair Findlay (the "Count XX Defendant").

400.    The 5/12/23 Agreement required that Defendant Omnia pay one million dollars ($1,000,000.00USD) to the Plaintiffs.

401.    Defendant Omnia executed the written 5/12/23 Agreement.

402.    The Defendant Omnia breached the terms of said 5/12/23 Agreement in that said Defendant Omnia never paid one million dollars ($1,000,000.00USD) to the Plaintiffs.

403.    After Defendant Omnia breached the terms of the 5/12/23 Agreement, the Count XX Defendant promised to pay the one million dollars ($1,000,000.00USD) to the Plaintiffs.

404.    The Count XX Defendant stated to the Plaintiffs that, "if [Defendant Findlay is allowed to remain on the Board of Directors of Plaintiffs] then [Defendant Findlay's father, David Mair Findlay] will pay [to Plaintiffs] the million."

405.    The Plaintiffs granted the Count XX Defendant's request and specifically performed by allowing the Count XX Defendant to remain on the Board of Directors as a Director of IHAC.

406.    Neither the Count XX Defendant nor the father of the Count XIII Defendant, David Mair Findlay, ever paid the one million dollars ($1,000,000.00USD) to the Plaintiffs.

407.    Plaintiffs detrimentally relied upon the Count XX Defendant's promises to pay the Plaintiffs one million dollars ($1,000,000.00USD).

408.    As a result of Plaintiffs' detrimentally reliance on the Count XX Defendant's promises to pay, the Plaintiffs were damaged in an amount of at least one million dollars ($1,000,000.00USD).


## COUNT XXI
## (UNJUST ENRICHMENT)
### (Against All Defendants)

409.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through and including paragraph 179 above as if fully set forth herein.

410.    This Count XXI is against Defendant Omnia Global, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Finlay (the "Count XXI Defendants").

411.    The Count XXI Defendants stated that the Count XXI Defendants were a family business organization possessing and/or controlling "hundreds of millions of dollars" in assets.

412.    The Count XXI Defendants stated that the Count XXI Defendants had sufficient assets to invest three million five hundred thousand dollars ($3,500,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

413.    The Count XXI Defendants stated that the Count XXI Defendants had sufficient assets to invest one million dollars ($1,000,000.00USD) with the Plaintiffs in exchange for a) an equity ownership in IHAC; and b) a Board of Director position with Plaintiff IHAC for Defendant Findlay.

414.    The Count XXI Defendants signed no less than two (2) agreements memorializing the terms stated above (10/17/22 Terms and 5/12/23 Agreement).

415.    The Count XXI Defendants, at the times it made the above statements to the Plaintiffs did not have or control, nor did believe it had or controlled, the assets it claimed it owned or controlled.

416.    The Count XXI Defendants, at all times during the Relevant Period, knew that the statements the Count XXI Defendants made to the Plaintiffs were false.

417.    The Count XXI Defendants knew that the representations the Count XXI Defendants made to the Plaintiffs and memorialized in the 10/17/22 Terms and the 5/12/23 Agreement were false at that time it executed the 10/17/22 Terms and the 5/12/23 Agreement.

418.   The Count XXI Defendants made and continued to make the same false representations that it had or controlled sufficient assets to carry out the obligations it committed to for an extended period of at least one (1) year.

419.   The Count XXI Defendants sent dozens of electronic mails, text messages, and WhatsApp messages to the Plaintiffs representing that the Count XXI Defendants would be sending the monies the Count XXI Defendants committed to in its memorialized agreements, in the statements made during the NYC Meetings, in the statements made in the Swiss meetings, and in other statements made by the Count XXI Defendants to the Plaintiffs.

420.   The Count XXI Defendants knew that the statements they were making to the Plaintiffs were false at the time they made the statements to the Plaintiffs.

421.   The Plaintiffs detrimentally relied on the false oral and written statements made by the Count XXI Defendants.

422.   In reliance of the false oral and written statements made by the Count XXI Defendants to the Plaintiffs, the Count XXI Defendants were given a Board Seat at IHAC by the Plaintiffs.

423.   The Count XXI Defendants held the Board Seat at IHAC for more than one (1) year.

424.   During the more than one (1) year period that the Count XXI Defendants had the Board Seat, the Count XXI Defendants were benefited in that Defendant Findlay was able to rehabilitate damage to his reputation he suffered as a result of his criminal record, poor credit, and substance abuse problems.

425.     During the more than one (1) year period that the Count XXI Defendants had the Board Seat, the Count XXI Defendants were benefited by the Trade Secrets and other business property belonging to the Plaintiffs they illegally acquired.

426.     Under the circumstances of this case, it would be inequitable for the Count XXI Defendants to retain the property, intellectual property, and other benefits they have received at Plaintiffs' expense.

427.     The property, intellectual property, and other benefits received by the Count XXI Defendants, and any profits received by the Count XXI Defendants derived from unlawfully obtained Plaintiffs' property belong in equity and good conscience to the Plaintiffs.

428.     As a result of the above tortious conduct, the Count XXI Defendants were unjustly enriched by at least fifty million dollars ($50,000,000.00USD).


## COUNT XXII
### (EXEMPLARY PUNITIVE DAMAGES)
### (Against All Defendants)

429.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

430.     This Count XXII is against Defendant Omnia Global, Defendant Daniel Hansen, Defendant Mette Abel Hansen, and Defendant James Mair Finlay (the "Count XXII Defendants")

431.     The Count XXII Defendants' actions alleged above were malicious, willful and wanton, and were made with specific intent to harm Plaintiff.

432.     Moreover, the Count XXII Defendants' actions violated 18 U.S.C. § 1343 as alleged above.

433.     Moreover, the Count XXII Defendants' actions violated 18 U.S.C. § 1951(a) as alleged above.

434.     Moreover, the Count XXII Defendants' actions constitute fraud and conspiracy to commit fraud, theft of business property, and misappropriation of trade secrets.

435.     In order to deter such conduct in the future, Plaintiffs should be awarded exemplary punitive damages in an amount of not less than fifty million dollars ($50,000,000.00USD).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Bengochea Capital LLC and Iron Horse Acquisitions, respectfully requests that this Court:

(a)     enter a judgment that the Defendants, and each of them, conducted or participated in the conduct of enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

(b)     enter a judgment that the Defendants, and each of them, conducted or participated in the conduct of enterprises affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d);

(c)     enter a judgment against the Defendants, and each of them, perpetrated a fraud upon Plaintiffs;

(d)     enter a judgment against Defendant Omnia Global a.k.a. Omnia Schweiz, perpetrated a fraud upon Plaintiffs;

(e)     enter a judgment against Defendant Daniel Hansen, individually, perpetrated a fraud upon Plaintiffs;

(f)      enter a judgment against Defendant James Mair Findlay, individually, perpetrated a fraud upon Plaintiffs;

(g)      enter a judgment against Defendant Mette Abel Hansen, individually, perpetrated a fraud upon Plaintiffs;

(h)      enter a judgment against the Defendants, and each of them, committed civil conspiracy upon Plaintiffs;

(i)      enter a judgment in favor of Plaintiff IHAC against the Defendants, and each of them, have converted business property and assets of Plaintiff IHAC;

(j)      enter a judgment in favor of Plaintiff IHAC against the Defendants James Mair Findlay, individually, has converted business property and assets of Plaintiff IHAC;

(k)      enter a judgment in favor of Plaintiff IHAC against the Defendants, and each of them, have misappropriated the trade secrets of Plaintiff IHAC;

(l)      enter a judgment in favor of Plaintiff IHAC against the Defendant James Mair Findlay, individually, has misappropriated the trade secrets of Plaintiff IHAC;

(m)      enter a judgment in favor of Plaintiff IHAC against the Defendants, and each of them, has breached its fiduciary duties owed to Plaintiff IHAC;

(n)      enter a judgment in favor of Plaintiff IHAC against the Defendant James Mair Findlay has breached his fiduciary duties owed to Plaintiff IHAC;

(o)      enter a judgment in favor of Plaintiff BC against Defendant Omnia Global that it breached the 10/17/22 Terms;

(p)      enter a judgment against Defendant Daniel Hansen in favor of Plaintiff BC, that he breached the 10/17/22 Terms;

(q)     enter a judgment in favor of Plaintiff BC against Defendant Omnia Global that it breached the 5/12/23 Agreement;

(r)     enter a judgment against Defendant Daniel Hansen in favor of Plaintiff BC, that he breached the 5/12/23 Agreement;

(s)     enter a judgment against Defendant Daniel Hansen in favor of Plaintiff BC, that he breached the agreement he entered into with Plaintiff BC;

(t)     enter a judgment against the Defendants, and each of them, that they caused damages to the Plaintiffs who detrimentally relied upon the Defendants' false statements;

(u)     enter a judgment against the Defendants, and each of them, for their unjust enrichment due to the harm they caused the Plaintiffs;

(v)     award compensatory damages to the Plaintiffs and against all Defendants, and each of them, jointly and severally, in an amount of no less than fifty million dollars ($50,000,000.00USD);

(w)     award treble damages to the Plaintiffs and against all Defendants, and each of them, jointly and severally, in an amount of no less than one hundred and fifty million dollars ($150,000,000.00USD);

(x)     award the Plaintiffs exemplary and punitive damages against all Defendants, and each of them, jointly and severally, in an amount of no less than one hundred and fifty million dollars ($150,000,000.00USD);

(y)     award reasonable attorney fees, costs and prejudgment interest to the Plaintiffs and against all Defendants, and each of them, jointly and severally;

(z)     award the Plaintiffs such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs Bengochea Capital, LLC, and Iron Horse

Acquisitions Corp. hereby demands trial by jury of all issues triable of right to a jury.


Dated: January 4, 2024

Respectfully submitted,

THE BEAR FIRM, P.C.

By:    /s/ Albert J. Santoro
Albert J. Santoro, Esq.

The Bear Firm, P.C.
50 West 47th Street, Suite 2006
New York, N.Y. 10036
Telephone: (212) 970-1099
albert@bearfirm.law

***Attorneys for the Plaintiffs***