UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRON HORSE ACQUISITIONS CORP. and BENGOCHEA CAPITAL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OMNIA GLOBAL a.k.a. OMNIA SCHWEIZ GMBH, DANIEL HANSEN, METTE ABEL HANSEN, and JAMES MAIR FINDLAY,<br><br>Defendants. | Case No. 1:24-cv-00048<br><br>RICO STATEMENT |

Plaintiffs Iron Horse Acquisitions Corp. and Bengochea Capital LLC (collectively as the "Plaintiffs"), by and through their undersigned attorneys, file this RICO Statement and provide the following answers (in **bold**) regarding their RICO claims:

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d):

   **The alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(c) and 1962(d).**

2. List each defendant and state the alleged misconduct and basis of liability of each defendant:

**Defendant Omnia Global**, acting individually and in concert with its co-defendant co-conspirators, engaged in extortion by threatening physical violence against the Plaintiffs, engaged in mail fraud by transmitting materially-false information to the Plaintiffs on more than twenty (20) occasions thereby defrauding the Plaintiffs of not less than three million five hundred thousand dollars ($3,500,000.00), engaged in theft of corporate secrets by installing the Enterprises' own member on the Board of Directors in order to conspire to steal, and, ultimately did steal, trade secrets and other business property belonging to the Plaintiffs worth in excess of fifty million dollars ($50,000,000.00). The basis of liability for Plaintiffs' claims is that Defendant Omni committed said acts against the Plaintiffs, itself and acting in concert with its co-conspirators and, as result of the misconduct, the Plaintiffs suffered monetary and other losses.

**Defendant Daniel Hansen**, acting individually and in concert with his co-defendant co-conspirators engaged in extortion by threatening physical violence against the Plaintiffs, engaged in mail fraud by transmitting materially-false information to the Plaintiffs on more than twenty (20) occasions thereby defrauding the Plaintiffs of not less than three million five hundred thousand dollars ($3,500,000.00), engaged in theft of corporate secrets by installing the Enterprises' own member on the Board of Directors in order to conspire to steal, and, ultimately did steal, trade secrets and other business property belonging to the Plaintiffs worth in excess of fifty million dollars ($50,000,000.00). The basis of liability for Plaintiffs' claims is that Defendant Daniel Hansen committed said acts against the Plaintiffs himself and acting in concert with his co-conspirators and, as a result of the misconduct, the Plaintiffs suffered monetary and other losses.

**Defendant Mette Abel Hansen**, acting individually and in concert with her co-defendant co-conspirators engaged in extortion by threatening physical violence against the Plaintiffs, engaged in mail fraud by transmitting materially-false information to the Plaintiffs on more than twenty (20) occasions thereby defrauding the Plaintiffs of not less than three million five hundred thousand dollars ($3,500,000.00), engaged in theft of corporate secrets by installing the Enterprises' own member on the Board of Directors in order to conspire to steal, and, ultimately

**did steal, trade secrets and other business property belonging to the Plaintiffs worth in excess of fifty million dollars ($50,000,000.00). The basis of liability for Plaintiffs' claims is that Defendant Mette Abel Hansen committed said acts against the Plaintiffs herself and acting in concert with her co-conspirators and, as a result of the misconduct, the Plaintiffs suffered monetary and other losses.**

**Defendant James Mair Findlay, acting individually and in concert with his co-defendant co-conspirators engaged in extortion by threatening physical violence against the Plaintiffs, engaged in mail fraud by transmitting materially-false information to the Plaintiffs on more than twenty (20) occasions thereby defrauding the Plaintiffs of not less than three million five hundred thousand dollars ($3,500,000.00), engaged in theft of corporate secrets by installing the Enterprises' own member on the Board of Directors in order to conspire to steal, and, ultimately did steal, trade secrets and other business property belonging to the Plaintiffs worth in excess of fifty million dollars ($50,000,000.00). Defendant James Mair Findlay, in furtherance of the Enterprises' criminal conspiracy maintained a Board of Director's position on Plaintiff Iron Horse Acquisitions Corp.'s Board in order to steal, and ultimately did steal intellectual property and other business property of the Plaintiffs. The basis of liability for Plaintiffs' claims is that Defendant James Mair Findlay committed said acts against the Plaintiffs himself and acting in concert with his co-conspirators and, as a result of the misconduct, the Plaintiffs suffered monetary and other losses.**

3. List the alleged wrongdoers, other than the defendants, and state the misconduct of each wrongdoer:

**There are no other wrongdoers known to the Plaintiffs at this time but Plaintiffs reserve the right to amend this Rico Statement and their Complaint to add additional defendants if further investigation warrants such.**

4. List the alleged victims and state how each victim was allegedly injured.

> **Plaintiffs Iron Horse Acquisitions Corp. and Bengochea Capital LLC are victims of the Defendants and suffered the following injuries:**
>> **The Defendants threatened physical violence against the Plaintiffs should the Plaintiffs seek redress in this Court.**
>>
>> **The Defendants engaged in wired fraud in making material misrepresentations to the Plaintiffs and thereby causing damages for breach of contract, misappropriation of trade secrets, theft of business property, detrimental reliance, and unjust enrichment in an amount exceeding fifty millions dollars ($50,000,000.00).**
>>
>> **The Defendants utilized offshore shell companies in order to defraud the Plaintiffs and in to avoid payment of three million five hundred thousand dollars owed to the Plaintiffs.**
>>
>> **The Defendants defrauded a U.S. Law Firm (which is not a Plaintiff in this action) of at least one million two hundred thousand dollars ($ 1,200,000.00).**
>>
>> **Upon information and belief, the Defendants defrauded the investors in the Defendants' various 'investments' (who are not Plaintiffs in this action) thereby damaging those investors in unknown amounts but likely in the millions of dollars.**

5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:

> **Defendants Omnia, Daniel Hansen, Mette Abel Hansen, Findlay, and the Enterprise did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) in that they did engaged in, attempted to engage in and/or conspired to engage in**

criminal extortion as defined in 18 U.S.C. § 1961(1)(A) and prohibited under 18 U.S.C. § 1951(a) by threatening physical violence against Plaintiffs thereby acting "in [a] way [that], obstructs, delay, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion…". Defendants Omnia, Daniel Hansen, Mette Abel Hansen, and Findlay, and the Enterprise did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) in that they did engage in fraud by wire as numerated 18 U.S.C. § 1961(1)(a) and prohibited under 18 U.S.C. § 1343 by transmitting documents, SMS messages, Apple messages, texts, voice mails, and emails containing fraudulent representations or in furtherance of Defendants' scheme to defraud the Plaintiffs by "wire, radio, or television communication" and did "devise[] or intend[] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [by] transmit[ting] or caus[ing] to be transmitted by means of wire, radio, or television communication in interstate or foreign commence [] writings, signs, signals, pictures, or sounds for purpose of executing such scheme or artifice…"

a. List the alleged predicate acts and the specific statutes that were allegedly violated;

   **Wire Fraud in violation of 18 U.S.C. §§ 1961(1)(a) and 1343**
   **Extortion in violation of 18 U.S.C. §§ 1961(1)(A) and 1951(a)**

b. Provide the dates of, the participants in, and a description of the facts surrounding the predicate acts;

   **On or about October 17, 2022, the Defendants acting in concert executed a written document containing material misrepresentations in order to obtain securities, trade secrets, and other business property belonging to the Plaintiffs and transmitted said document via wire; and**

   **On or about May 12, 2023, the Defendants acting in concert executed a written document containing material misrepresentations in order to obtain securities,**

**trade secrets, and other business property belonging to the Plaintiffs and transmitted said document via wire; and**

**In or about November 2023, the Defendants, acting in concert, extorted and/or attempted to extort the Plaintiffs by threatening and/or implying the threat of physical violence against the Plaintiffs in a way that obstructed, delayed, and affected interstate commerce; and**

**On more than 20 other occasions too voluminous to list in the Rico Statement (but can be supplied to the Court upon request), the Defendants engaged in wire fraud and/or acts of extortion.**

c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

**On or about October 17, 2022, the Defendants acting in concert executed a written document containing material misrepresentations that included assurances of funds to be delivered to the Plaintiffs in order to obtain securities, trade secrets, and other business property belonging to the Plaintiffs and transmitted said document via wire to the Plaintiffs; and**

**On or about May 12, 2023, the Defendants acting in concert executed a written document containing material misrepresentations that included of funds to be delivered to the Plaintiffs in order to obtain securities, trade secrets, and other**

**business property belonging to the Plaintiffs and transmitted said document via wire to the Plaintiffs; and**

**On more than 20 other occasions too voluminous to list in this Rico Statement (but that can be supplied to the Court upon request), the Defendants engaged in wire fraud by sending via electronic communications documents, text messages, emails, and other forms of electronic means, communications that contained materially false information in order to defraud the Plaintiffs by send said communications to the Plaintiffs.**

d. State whether a predicate act is based upon a criminal conviction;

**No predicate act is based upon a criminal conviction.**

e. State whether civil litigation has resulted in a judgment with regard to the predicate acts;

**To the best of the Plaintiffs' knowledge, there has not been any other civil litigation commenced other than the above-captioned action.**

f. Describe how the predicate acts form a "pattern of racketeering activity"; and

**The Defendants and the Enterprise engaged in a "pattern of racketeering activity" by engaging in long-term organized conduct that took place over a period of more than one (1) year, in that they transmitted numerous (more than 20) fraudulent material misrepresentations via wire, engaged in numerous (more than 20) meetings with the Plaintiffs in which they made**

**fraudulent representations or in order to further their organized fraud, transmitted hundreds of emails via containing either false information or in order to further their organized fraud, and engaged in criminal extortion by threatening or implying the threat of physical violence with regards to property, and all of the acts committed by the Defendants and the Enterprise "have the same or similar purposes, results, participants, victims, methods of commission, or otherwise [are] interrelated by distinguishing characteristics and are not isolated events."**

 

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.
**All of the predicate acts relate to each other as each was done with the common goal and purpose of defrauding the Plaintiffs out of, or unlawfully converting, the Plaintiffs property. By repeatedly making material misrepresentations of facts to the Plaintiffs, the Defendants, over a period of greater than one (1) year were able to gain the trust of the Plaintiffs and were able to gain access to the property of the Plaintiffs that the Defendants unlawfully converted, misappropriated, or outright stole.**

6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

**The enterprise is comprised of both a corporate Defendant, Omnia Global, and several individual Defendants, Daniel Hansen, Mette Abel Hansen, and James Mair Findlay. All of the Defendants are "culpable persons" because they are each an "individual or entity capable of holding a legal or beneficial interest in property" as defined by of 18 U.S.C. § 1961(3). The enterprise of the Defendants is an "enterprise" as defined by of 18 U.S.C. §§ 1961(4) because, the Defendants intended to form and did form an association which was operated by the Defendants to conduct**

**racketeering activity, and such the enterprise is an "individual, partnership, corporation, association, or other legal entity." Each of the Defendants holds it/his/herself out to the general public (and to the Plaintiffs in particular) as an organization "working together". Each of the Defendants holds a role in the enterprise and benefits from the enterprise. Each of the Defendants advertise on websites and other social media that the Defendants are all "working together" and each has various "roles" in the enterprise.**

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;
   **Omnia Global, Daniel Hansen, Mette Abel Hansen, and James Mair Findlay**

b. Describe the structure, purpose, function and course of conduct of the enterprise;

   **The enterprise is a hierarchical structure with Defendant Daniel Hansen being the highest-level decision maker, followed by Defendant Mette Abel Hansen, and then by Defendant James Mair Findley.**

   **The purpose the enterprise is to extort and defraud U.S. citizens and U.S. businesses.**

   **The enterprise functions by holding itself out to its victims as a legitimate investment firm and then once it gains its victims trust, extorts and defrauds them.**

   **The course of conduct of the enterprise is using fraudulent documents, contracts containing material misrepresentation, and other means to extort and defraud its victims, and to steal the intellectual property, trade secrets, and other business property of its victims.**

c. State whether any defendants are employees, officers, or directors of the alleged enterprise;

> **Corporate Defendant Omnia Global has a yet-undefined position/role in the enterprise;**
> **Defendant Daniel Hansen is an employee, director, and officer of the enterprise;**
> **Defendant Mette Abel Hansen is an employee, director, and officer of the enterprise;**
> **Defendant James Mair Findlay is an employee and officer of the enterprise.**

d. State whether any defendants are associated with the alleged enterprise;

> **Defendants Omnia Global, Daniel Hansen, Mette Abel Hansen, and James Mair Findlay are all associated with the alleged enterprise.**

e. State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

> **All Defendants are members of the enterprise.**

f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

> **Defendants Omnia Global, Daniel Hansen, and Mette Abel Hansen are all members of the enterprise and each are perpetrators of the alleged racketeering activity.**

**Defendant James Mair Findlay is a member of the enterprise, is a perpetrator of the alleged racketeering activity, and is a victim of other racketeering activity committed against him by Defendants Omnia Global, Daniel Hansen, and Mette Abel Hansen.**

7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

**As with any criminal enterprise, its bad actors engage in deception, deceit, and fraud to mislead, obfuscate, and conceal the true nature of the enterprises' criminal conduct. At this early stage of the litigation, before any discovery has been completed, the Plaintiffs proffer to this Court that the pattern of racketeering activity and the enterprise have merged into one entity because the racketeering activity is so pervasive in the enterprise and among each of the Defendants that it is difficult, if not impossible, to separate the two. Specifically, Omnia Global operates out of a typical boiler-room-empty-office which operates adjacent to a urologist's office in Switzerland. There is no one on premises and all calls are forwarded to a very-well-versed remote answering service. Like many of the fraudsters of today utilizing the "fake it until you make it" form of business organization, these bad actors may have started out with good intentions, but instead quickly turned to the dark side by engaging in fraud, extortion, and theft by utilizing several schemes and artifices to succeed in their endeavors. Another clear reason that the activity and the enterprise merged into one entity can be seen in the example where Omnia defrauded its own law firm out of more than one million two hundred thousand dollars ($1,200,000.00). Another is found in the fact that Hansen, upon information and belief is alleged to have utilized his legitimate investor funds in order to illicitly purchase a private jet for himself. In short, the racketeering activity has so overshadowed any legitimate activity of the Defendants, that it is clear the activity and the enterprise have merged.**

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

**The enterprise held itself out, and continues to hold itself out to the general public and specifically to the Plaintiffs, as a reputable financial firm with experience in investing in the Plaintiffs' business. The enterprise regularly conducts business with the general public and companies similar to that of the Plaintiffs. In conducting what appears to be legitimate investing activities, the Defendants instead utilize schemes to defraud, extortion, conversion, and other illegal and/or tortious conduct in the conduct of its enterprise business. In using its "legitimate cover", that of a legitimate investment firm, the Defendants are able to get access to, and acquire the trust of, businesses located in the U.S. and elsewhere. By using professionally-produced marketing and informational materials, and professionally-produced websites and social media profiles, the Defendants are able to use their seemingly-legitimate business in order to engage in RICO and other criminal and tortious activity against their victims. The racketeering activity of the enterprise does not differ from the usual and daily activities of the enterprise as the Defendants are using their enterprise to defraud their own investors, their own law firm, and the Plaintiffs.**

9. Describe what benefits, if any, the alleged enterprise receives from the pattern of racketeering.

**The criminal enterprise receives and received the following benefits from its pattern of racketeering:**

**a) Financial and monetary benefits of at least three million five hundred thousand dollars ($3,500,000.00);**

**b) Intellectual property, trade secrets, and other business property valued at more than fifty million dollars ($50,000,000.00); and**

**c) Unjust enrichment by placing a co-conspirator of the enterprise ("James Mair Findlay") on the Board of a soon-to-be publicly traded company (which did indeed become a publicly traded company trading on the Nasdaq Stock Market under the symbol "IROH") in order to rehabilitate Findlay's disreputable reputation.**

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

**Plaintiffs Iron Horse Acquisitions Corp. and Bengochea Capital, LLC operate in multiple states in the U.S. and abroad. Plaintiffs conduct business in the stream of interstate commerce. The Plaintiffs employ officers, directors, vendors, law firms, and contractors located in multiple U.S. states, including, but not limited to New York, California, and Florida. Plaintiff Iron Horse Acquisitions Corp. which is now a public company trading on the Nasdaq Stock Market under the symbol "IROH", was, at all times relevant to the Complaint, seeking to "go public" with its Initial Public Offering having been registered with the SEC, and the Defendants, acting individually and in concert, extorted and defrauded the Plaintiffs thereby affecting interstate commerce.**

11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:
    a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and
    b. Describe the use or investment of such income.
    **The complaint does not allege a violation of 18 U.S.C. § 1962(a).**

12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.
    **The complaint does not allege a violation of 18 U.S.C. § 1962(b).**

13. If the complaint alleges a violation of 18 U.S.C. § 1962(c):
    a. State who is employed by or associated with the enterprise, and

    **Omnia Global, Daniel Hansen, Mette Abel Hansen, James Mair Findlay and possibly other, yet unknown co-conspirators that will be revealed during discovery.**

b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c.)

**The entity is both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c).**

14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

**Defendants Daniel Hansen, Mette Abel Hansen, and James Mair Findlay, acting together with Defendant Omnia held themselves out as a reputable financial firm with hundreds of millions of dollars in assets while each Defendant knew this information to be false. Each of the Defendants met with and were present during meetings with the Plaintiffs while the Defendants jointly and acting in concert made materially false representations to the Plaintiffs in order to extort and defraud the Plaintiffs, misappropriate the Plaintiffs' intellectual property and trade secrets, and convert the Plaintiffs business assets. Specifically, each Defendant aided each co-defendant in authoring, drafting, publishing and conveying written instruments containing materially false information to the Plaintiffs via wire. The Defendants, acting individually and in concert, threatened physical violence against the Plaintiffs. The Defendants all published in a multitude of publicly available media, information indicating that the Defendants were all "working together". The Defendants each claim in multiple websites, social media sites, promotional and marketing materials that the Defendants are all "working together." The Defendants each conveyed false statements and threats of extortion made by their co-defendants to the Plaintiffs. The Defendants all benefited together from the illegal and/or tortious conduct committed by each Defendant individually. Each Defendant conspired with each co-defendant in that each Defendant affirmatively agreed to defraud the Plaintiffs. Each Defendant planned with their co-defendants and carried out with their co-defendants their criminal and tortious conduct against the Plaintiffs as part of a more-than-one-year scheme to defraud the Plaintiffs. Defendant Omnia regularly participated in,**

**directed, controlled, and profited from the Enterprise. Defendant Daniel Hansen regularly participated in, directed, controlled, and profited from the Enterprise. Defendant Mette Abel Hansen regularly participated in, directed, controlled, and profited from the Enterprise. Defendant Findlay regularly participated in, directed, controlled, and profited from the Enterprise.**

15. Describe the alleged injury to business or property.

**Defendants Omnia Global, Daniel Hansen, Mette Abel Hansen, and James Mair Findlay, acting individually and in concert with their co-defendant co-conspirators, extorted the plaintiffs, defrauded the Plaintiffs out of three million five hundred thousand dollars ($3,500,000.00), misappropriated trade secrets and intellectual property belonging to the Plaintiffs worth more than fifty million dollars ($50,000,000.00), converted business property belonging to the Plaintiffs, and were unjustly enriched as a result of their criminal and/or tortious conduct.**

16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

**By engaging in extortion and wire fraud, the Defendants caused the Plaintiffs to rely on the fraudulent representations of the Defendants, which directly caused the Plaintiffs to be defrauded of at least three million five hundred thousand dollars ($3,500,000.00). In addition, by engaging in extortion and wire fraud, the Defendants were able to misappropriate trade secrets and intellectual property belonging the Plaintiffs valued at no less than fifty million dollars ($50,000,000.00). Lastly, by engaging in extortion and wire fraud, the Defendants were able to unlawfully obtain business property belonging to the Plaintiffs.**

17. List the damages sustained for which each defendant is allegedly liable.

**Defendants Omnia Global, Daniel Hansen, Mette Abel Hansen, and James Mair Findlay, acting individually and in concert with their co-defendant co-conspirators, are each jointly and severally liable to the Plaintiffs for damages in excess of fifty million dollars ($50,000,000.00) for violations of 18 U.S.C. §§ 1962(c) and 1962(d), extortion, mail fraud, fraud, theft of business property, misappropriation of trade secrets, civil conspiracy, breach of contract, breach of fiduciary duty, detrimental reliance and unjust enrichment.**


18. List all federal causes of action, if any, and provide the relevant statute numbers.

    **Count 1:**  **Conduct of or Participation in the Conduct of Enterprise's Affairs Through a Pattern of Racketeering Activity in Violation of 18 U.S.C. § 1962(c)**

    **Count 2:**  **Conduct of or Participation in the Conduct of Enterprise's Affairs Through a Pattern of Racketeering Activity in Violation of 18 U.S.C. § 1962(d)**


19. List all pendent state claims, if any.

    **Counts 3 - 6 :**      **Fraud**
    **Count 7:**            **Civil Conspiracy**
    **Counts 8 and 9:**     **Theft / Conversion of Business Property**
    **Counts 10 and 11:**   **Misappropriation of Trade Secrets**
    **Counts 12 and 13:**   **Breach of Fiduciary Duty**
    **Counts 14 - 18:**     **Breach of Contract**
    **Counts 19 and 20:**   **Detrimental Reliance**
    **Count 21:**           **Unjust Enrichment**
    **Count 22:**           **Exemplary Punitive Damages**

20. Provide any additional information potentially helpful to the Court in adjudicating your RICO claim.

**It is the Plaintiffs' good faith belief that there are many other victims of the Defendants' unlawful and tortious conduct. Counsel for the Plaintiff will be requesting permission of this Court to publish a) a website providing information about the case in an effort to locate additional victims and witnesses; b) advertisements in leading financial journals in the U.S. and abroad seeking additional victims of the Defendants and witnesses to their conduct. Granting counsel's reasonable request would be helpful to this Court in adjudicating the Plaintiffs' RICO claims.**

Dated: January 23, 2024

                    Respectfully submitted,

                    THE BEAR FIRM, P.C.

By: /s/ Albert J. Santoro
Albert J. Santoro, Esq.

The Bear Firm, P.C.
50 West 47th Street, Suite 2006
New York, N.Y. 10036
Telephone: (212) 970-1099
albert@bearfirm.law

***Attorneys for the Plaintiffs***